## Ephraim Larrabee *vs.* W. A. Talbott, P. T. of Charles P. Rogers and George A. Frick.—*December,* 1847.

*D.*, a resident and citizen of *New York*, sold and delivered goods in that city to *R.*, a resident and citizen of *Maryland*, for which the latter on the 12th May, 1841, in fact, gave the former his note at six months, dated 6th November, 1840, due 9th May, 1841. On the back of that note was endorsed a receipt of the 12th May, 1841, of *L.* in *Maryland*, for merchandise to the value of $535, and several promissory notes of third parties for $538 80, from *R.* on account of the note at 6 months, which was delivered up to him. On the 12th May, *R.* was insolvent, which fact was known to *D.*, for whom *L.* acted as agent. In August following, *R.* applied for relief under the insolvent laws of *Maryland*. In an action of trover, brought by his permanent trusteee against *L.*, to recover the value of the merchandise and notes which he received from *R.* *Held* :

1. That the original contract between *D.* and *R.* was a *New York* contract, in legal contemplation to be performed there, and governed by the laws of that State.

2. That the note subsequently given by *R.* to *D.*, as evidence of his indebtedness, could not alter the locality of the original contract.

3. As that note was not paid, *D.* might have sued on the original contract.

Upon a contract made with a citizen of *Maryland*, out of this State, to be performed in another State, by a citizen of another State, a discharge, obtained under the insolvent laws of *Maryland*, cannot affect the right of the creditor to an absolute and unqualified judgment in the courts of this State, and to place his execution upon any property of the insolvent debtor, to be found undistributed in the hands of his permanent trustee, under our insolvent system.

The decisions of the Supreme Court of the *United States*, upon all questions of constitutional law, are to be received as conclusive.

The late bankrupt law of the *United States* was enacted on the 19th August, 1841. It expressly provided that it should take effect only from and after the 1st February, 1842. This is equivalent to declaring that it should have no effect until that day, and hence it did not suspend the operation of the State insolvent laws until that day.

Appeal from *Baltimore* County Court.

This was an action of trover, brought on the 31st March, 1842, by the appellee against the appellant, for divers articles of merchandise and promissory notes, enumerated and described in the declaration. The defendant pleaded not guilty, on which issue was joined. The verdict was for the plaintiff.

At the trial of the cause, the plaintiff offered evidence to show that *Rogers & Frick* being citizens of *Baltimore*, applied for the benefit of the insolvent laws of *Maryland*, to the commissioners of insolvent debtors for the city and county of *Baltimore*, on the 30th August, 1841. That the plaintiff was appointed permanent trustee of said applicants on the 20th December, 1841, and filed his bond with approved security, for the faithful discharge of his duties as such; that on the 12th May, 1841, *Rogers & Frick* were co-partners under that name, were then insolvent, and that such insolvency was then known to *D. Berrien, Jr. & Co.*; that on said 12th May, 1841, *Rogers & Frick* were indebted to *D. Berrien, Jr. & Co.* in the sum of $1071 73 in the promissory note hereinafter inserted, and gave the said *D. Berrien* the goods to the amount of $535, and the bills receivable and promissory notes of debtors of said firm of *R. & F.* to the amount of $538 80, being the goods and notes set forth in the declaration in this cause, in payment of the indebtedness of said *R. & F.* to *D. Berrien, Jr. & Co.*, and that said goods and notes came into the possession of the defendant, as the agent of the said *D. Berrien, Jr. & Co.*; that at the time of such payment, said *Rogers & Frick* intended to apply for the benefit of the insolvent laws of the State of *Maryland*.

The defendant, to maintain the issue on his part, offered evidence to show that said *Rogers & Frick* were not insolvent on the said 12th May, 1841, but then believed themselves able to pay all their debts; that they did not intend to take the benefit of the insolvent laws, nor did they suppose from the nature of their circumstances that they would have to do so, but expected fully to pay all their debts. And further offered evidence that *Rogers & Frick* on that day had ample means to pay their debts, without being compelled to take the benefit of the insolvent laws; that *D. Berrien, Jr.* was wholly unaware of the insolvent condition of *Rogers & Frick* on the 12th May, 1841, and for some time thereafter.

The plaintiff, further to maintain the issue on his part, gave in evidence by *J. P. Delacour*, that he, witness, was clerk of

*R. & F.* from June, 1840, till they failed; that *D. Berrien, Jr.* came to *Baltimore* on or about the 12th May, 1841, who told witness that at the instance of *R. & F.* he had come on from *New York* to settle his account; that *Berrien* and *R. & F.* had a settlement, and that *Berrien* received goods and notes in satisfaction of the indebtedness of *R. & F.* The goods were packed up in six boxes, marked **T**, (diamond T) and were sent off on Monday morning early, succeeding the settlement. Witness looked at the books, and found they were charged to *E. Larrabee. Berrien* gave witness a list of the notes taken in part settlement of *R. & F's* indebtedness to *D. Berrien, Jr. & Co.*, and told witness the notes were at *Larrabee's*, where the debtor's on the notes might find them; and asked witness to take any of said debtors he might see, to *Larrabee.* Witness took *Johnson*, one of the debtors, to *Larrabee*, who paid his note. Witness asked *Larrabee* if he would give witness a commission of two and a half per cent, to bring the debtors to him. *Larrabee* said he was but an agent for *Berrien*, and would write to *Berrien* to see if he would consent to the commission; that the notes taken by *Berrien* and left with *Larrabee* were of good men; that witness has never known of any dealings between *Rogers & Frick* and *Larrabee*, and does not know that *Rogers & Frick* were known to *Larrabee* at the time of the settlement with *Berrien.* Witness never saw *Larrabee* at the store of *Rogers & Frick*, and *Larrabee* always told witness he was but the agent of *D. Berrien, Jr. & Co.*

The plaintiff further gave in evidence the promissory note of *Rogers & Frick* in favor of *D, Berrien, Jr. & Co.*, with its endorsements.

*Baltimore*, Nov. 6th, 1840.

$1071 70. Six months after date, we promise to pay to the the order of *Messrs. D. Berrien, Jr. & Co.*, ten hundred and seventy-one dollars and seventy cents, value received.

No.     Due 6—9.                    *Rogers & Frick.*

On the back of which said note were the following endorsements, to wit:

Pay to the order of *Mr. E. Larrabee.*

> *D. Berrien, Jr. & Co.*

> *Baltimore,* May 12th, 1841.

Received on the within note, bill of merchandise to the amount of five hundred and thirty-five dollars.

$535 00. *Eph'm Larrabee.*

Received the following notes to balance the amount of this note:

| | |
|---|---:|
| *Wolfenburger & Kerr,* . . . . . | $207 43 |
| *Wm. Johnson,* . . . . . . | 63 82 |
| *Eli Overdeen,* . . . . . . | 51 62 |
| *W. W. Wolfenburger,* . . . . . | 74 96 |
| *Wilson & Spier,* . . . . . . | 124 82 |
| *Jno. H. Grigg,* . . . . . . | 16 15 |
| | $538 80 |

May 12th, 1841. *Eph'm Larrabee.*

The signatures to said note of the makers, endorser and of *Larrabee* being admitted to be genuine; and further gave in evidence that the receipt of *E. Larrabee* on said note was the receipt of the defendant, and was for the goods and notes given by *Rogers & Frick* in payment of their debt to *D. Berrien, Jr. & Company.*

The plaintiff further gave in evidence the plaintiff's demand of the defendant of the goods and promissory notes (mentioned in his declaration) given as payment by *R. & F.* to *D. Berrien, Jr.*, which demand was made on the 20th January, 1842, on the defendant, and by him refused.

The defendant, further to maintain the issue on his part, gave in evidence by *Joseph W. Larrabee,* that witness was clerk of defendant and is his brother, that he never knew of any business transactions with *R. & F.* by the defendant. That he was clerk on the 12th May, 1841, and that he never saw any goods come in the store of defendant from *Rogers & Frick:* that if any had come, witness would have known it, as it would have been his duty to have entered them in the receipt book.

Witness saw *Berrien* in defendant's store in May, 1841, when then in *Baltimore;* does not know of any boxes shipped to *New York* in May, 1841.

The defendant further gave in evidence by *John Brown,* a competent witness, that the witness is agent for the coasting transportation line between *Baltimore* and *New York;* that on the 14th May, 1841, *E. Larrabee* shipped in his line of packets to *New York,* six boxes of goods marked T, (diamond T,) to *A. Gilbert;* that these goods were received on board on the 14th May, 1841; that he does not personally know who shipped these goods, but that the bill of lading is in the name of *E. Larrabee.*

The defendant further gave in evidence by *Edward W. Larrabee,* that he remembers when *Berrien* was in *Baltimore* in May, 1841; that *Berrien* left for *Washington,* on the 12th or 13th of May of that year; and then returned to the city of *Baltimore.* That *Berrien* went to *Washington* within two days after reaching *Baltimore;* that on the 14th May, 1841, about 8 or 9 o'clock, A. M., a drayman stopped before the defendant's store door with some boxes of goods on his dray, and entering the defendant's store, said to witness, " here are some goods from *Rogers & Frick,* who have told me to call here for the bill of lading for the *New York* packets:" that witness then saw the defendant step back to the desk in the back of the store, and after a little time give the drayman a piece of paper, which the drayman took, and drove off with the goods.

Whereupon the plaintiff prayed the court to instruct the jury as follows:

1. If the jury shall find from the evidence, that at the time *Rogers & Frick* assigned and delivered the merchandise and notes in question to *Berrien* or *Larrabee,* they had no reasonable expectation of being exempted from liability or execution, for or on account of their debts, without applying for the benefit of the insolvent laws, then the said transfer was made with a view, or under an expectation on the part of *Rogers & Frick,* of being or becoming insolvent debtors, and said trans-

fer is void; and shall further believe, that *Rogers & Frick* did afterwards apply for the benefit of the insolvent laws of *Maryland*, the plaintiff is entitled to recover, provided the jury shall also believe that *Berrien* had notice of the condition of insolvency of said *Rogers & Frick*. Notwithstanding, they shall also believe that *Larrabee* acted as the agent of *Berrien*, in the receipt of the property, and had shipped the goods to *Gilbert* before the demand of the plaintiff.

2. Although the jury should believe that *Rogers & Frick* had reasonable expectations of being exempted from liability or execution for or on account of their debts at the time of the assignment and delivery as referred to in the first instruction, yet, if the jury find the said assignment and delivery, and that the same was made with a view of being or becoming insolvent debtors, and with intent thereby to give an undue and improper preference, and that they afterwards applied for the benefit of the insolvent laws, then said assignment is void, although the jury should believe that said assignment was made in satisfaction of a *bona fide* debt due from said *Rogers & Frick;* and although the jury should find that *Berrien* had no notice of the condition of insolvency of said *Rogers & Frick*, if such insolvent condition existed at the time of said assignment; and the plaintiff is entitled to recover, although the defendant acted as mere agent of *Berrien*, if the jury shall find that the defendant shipped the goods before action brought, to *Gilbert* of *New York*.

Which instructions, the court (ARCHER, C. J., and PURVIANCE, A. J.) gave. The defendants excepted and prosecuted this appeal.

It was admitted in the Court of Appeals, that it was proved by each party, at the trial of this case in the court below, that *D. Berrien Jr. & Co.* were citizens of the State of *New York*, residing in the city of *New York*, before any dealings between them and *Rogers, Frick & Co.*, and so continued till the trial of this cause; and that the indebtedness of *Rogers & Frick* to said *D. Berrien, Jr. & Co.* was for goods sold and delivered by said *Berrien & Co.* at the city of *New York*, to said *Rogers & Frick*,

and for which indebtedness the promissory note set out in the bill of exceptions, was given by said *Rogers & Frick* to said *D. Berrien, Jr. & Co.;* that the said promissory note was given in *Baltimore,* on or about the 12th May, 1841, and after the 9th May, 1841; that the 9th May was the due day, by average, for the previous purchases of *Rogers & Frick;* that *Rogers & Frick* applied for the benefit of the insolvent law, and received their personal discharge on the 30th August, 1841; and the plaintiff was then appointed provisional trustee, and bonded as such. And it is agreed, that these facts shall be taken as part of the bills of exceptions.

It was also agreed, that the first three points of the appellant were raised by prayers offered, and refused on the trial below, which prayers were mislaid, and therefore, not inserted in the record. And that no objection shall be taken to said points, because of the non-appearance of said prayers in the record.

And it is further agreed, that no objection shall be taken to the prayers in the record, because of any informality or omission appearing on the face of such prayers.

That the fifth and sixth points be waived, and the seventh point be also waived, except so far as it raises the question whether the act of 1834, merges or repeals the sixth section of the act of 1816, ch. 221, and also the act of 1812, ch. 77, sec. 1.

It is further agreed, that if the court shall not reverse the judgment on any of the first three points, but shall be of opinion that in case there had been sufficient evidence given below, to prove that the goods shipped by the appellant to *Gilbert,* of *New York,* were so shipped by the order and direction of *Berrien & Co.,* and were in fact delivered to *Berrien & Co.* immediately thereafter; that such shipment and delivery discharged the defendant to that extent, and the plaintiff below, was not entitled to recover for such goods, that then the judgment shall be reversed, and judgment entered for the appellee, to the amount of six hundred and two dollars, with interest from the 30th September, 1843; and that the costs below, shall be paid by the appellant, and the costs in this court, by the appellee; the appellant reserving any right

of appeal he may have to the Supreme Court of the *United States.*

The cause was argued before DORSEY, CHAMBERS, MAGRU-DER and MARTIN, J.

By WM. H. NORRIS and REVERDY JOHNSON for the appellant, and

By TALBOTT and DOBBIN for the appellee.

MARTIN, J., delivered the opinion of this court.

By the sixth section of an act of Assembly of 1816, ch. 221, entitled an act relating to insolvent debtors in the city and county of *Baltimore,* it is enacted:—

"That all deeds, conveyances, transfers, assignments or sales of any property, real, personal or mixed, or of any debts, rights, or claims to any creditor or creditors, security or securities which have been or shall hereafter be made, by any person, with a view, or under an expectation of being or becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference to such creditor or creditors, security or securities, shall be absolutely null and void, and the title to property or claims so attempted to be conveyed, transferred, assigned or sold, shall vest in the trustee or trustees of such insolvent debtor as effectually as any property specified in the schedule of such insolvent debtor."

And by the first section of the act of 1834, ch. 293, entitled "a further supplement to the act relating to insolvent debtors in the city and county of *Baltimore,*" it is declared:

"That in all cases of applications hereafter to be made for the benefit of insolvent debtors under the act to which this is a supplement, all conveyances, assignments, sales, deliveries, payments, conversions or dispositions of property, &c. that shall be made or allowed to be made, whether upon request or otherwise, by any applicant with a view to the advantage or security of, and with intent to prefer any creditor or creditors, &c. of such applicant, when such applicant shall have no reasonable expectation of being exempted from liability

or execution for or on account of his debts without applying for the benefit of the insolvent laws as aforesaid, shall be deemed within the meaning and effect of the sixth section of the act to which this is a supplement, to have been made with a view or under an expectation on the part of the applicant, of being or becoming an insolvent debtor, and with an intent thereby to give an undue and improper preference;" with a *proviso,* " that the provisions of this section of the act, shall not apply as against any person claiming by virtue of any assignment, &c., for valuable consideration, from or under the creditor or creditors, &c.; nor to any case where the said creditor, or security, shall appear not to have had notice of the, condition of insolvency aforesaid, of said debtor."

... It appears from the evidence in this case, as incorporated into the bill of exceptions, that *D. Berrien & Co.,* merchants, residing in the city of *New York,* sold and delivered at *New. York* to *Rogers & Frick,* merchants, residing in the city of *Baltimore,* goods amounting to the sum of one thousand and seventy-one dollars and seventy three cents; that *D. Berrien,* Jr. visited. *Baltimore* at the instance of *Rogers & Frick,* for the purpose of settling his account; that on the 12th May, 1841, the promissory note set out in the bill of exceptions was given by *Rogers & Frick* to *D. Berrien, Jr. & Co.,* on account of their said indebtedness to them, and that on the same day the. merchandise, and promissory notes and bills receivable, mentioned in the declaration, were delivered by *Rogers & Frick* to *D. Berrien & Co.,* or to the defendant, as their agent, in payment of their promissory note; and that the note was cancelled and surrendered by *Berrien & Co.* into the possession. of *Rogers & Frick.*

It further appears from the record, that *Rogers & Frick* applied for the benefit of the insolvent laws of *Maryland,* and obtained their personal discharge on the 30th August, 1841; and that the appellee was appointed their provisional trustee on the 30th August, and their permanent trustee on the 20th December, 1841.

It also appears from the bill of exceptions, that the. plaintiff at the trial of the cause, introduced evidence to show that on

the 12th May, 1841, *Rogers & Frick* were actually insolvent, and that this condition of insolvency was known to *D. Berrien, Jr. & Co.*, and that *Rogers & Frick* intended at that time to apply for the benefit of the insolvent laws. And offered testimony to prove that the property mentioned in the declaration came into the possession of the defendant, as the agent of *D. Berrien, Jr. & Co.*, and that a demand was made by the plaintiff upon the defendant for the delivery of this property on the 20th January, 1842, and was by him refused.

With respect to this portion of the case, there was conflicting testimony offered by the defendant, with the exception of the demand and refusal: that was conceded, and in this condition of the cause, the plaintiff asked the court to give to the jury the following instructions:

1. If the jury shall find from the evidence, that at the time *Rogers & Frick* assigned and delivered the merchandise and notes in question to *Berrien* or *Larrabee*, they had no reasonable expectation of being exempted from liability or execution, for or on account of their debts, without applying for the benefit of the insolvent laws, then the said transfer was made with a view, or under an expectation on the part of *Rogers & Frick*, of being or becoming insolvent debtors, and said transfer is void; and shall further believe, that *Rogers & Frick* did afterwards apply for the benefit of the insolvent laws of the State of *Maryland*, the plaintiff is entitled to recover, provided the jury shall believe that *Berrien* had notice of the condition of insolvency of said *Rogers & Frick*. Notwithstanding, they shall also believe that *Larrabee* acted as the agent of *Berrien* in the receipt of the property, and had shipped the goods to *Gilbert*, before the demand of the plaintiff.

2. Although the jury should believe that *Rogers & Frick* had reasonable expectations of being exempted from liability or execution, for or on account of their debts, at the time of the assignment and delivery, as referred to in the first instruction, yet if the jury find the said assignment and delivery, and that the same was made with the view of being or becoming insolvent debtors, and with intent thereby to give an undue and

improper preference, and that they afterwards applied for the benefit of the insolvent laws, that then said assignment is void, although the jury should believe that said assignment was made in satisfaction of a *bona fide* debt due from said *Rogers & Frick,* and although they should find that *Berrien* had no notice of the condition of insolvency of said *Rogers & Frick,* if such insolvent condition existed at the time of said assignment; and the plaintiff is entitled to recover, although the defendant acted as mere agent of *Berrien,* if the jury shall find that the defendant shipped the goods before action brought, to *Gilbert* of *New York.*

These prayers were granted by the court below, and exceptions having been taken to the ruling of the court, the question presented for our consideration is, whether they erred in the instructions which they appear to have given to the jury, with respect to the law of the case.

It is apparent from the statement we have given of this case, that the material and prominent question raised by the record, is that which respects the validity of the transfer of the 12th May, 1841.

And upon this point, the counsel for the appellant have contended, that as *Berrien & Co.* were citizens of *New York,* the insolvent laws of *Maryland* could not prevent *Rogers & Frick* from discharging their *bona fide* indebtedness to them by a delivery of the property mentioned in the declaration; and that as the contract by which they were so indebted to *Berrien & Co.* was made in *New York,* such insolvent laws could not prevent the debt being discharged, in the mode and manner stated in the bill of exceptions.

We did not understand the counsel for the appellee as controverting the proposition advanced by the counsel for the appellant, that the contract between *Berrien & Co.* and *Rogers & Frick* was to be considered as a *New York* contract. The goods were purchased by *Rogers & Frick* in *New York,* and there is no doubt that in legal contemplation, the contract was to be performed there, and to be governed by the laws of that State. The fact that a promissory note was subsequently

drawn at *Baltimore* by *Rogers & Frick*, in favor of *Berrien & Co.*, as evidence of their indebtedness, cannot be treated as altering the locality of the contract. The original cause of action is never considered as extinguished by the mere taking of the promissory note of the debtor, and therefore, if the note is not paid, and is surrendered, it has always been held, that an action may be maintained on the common courts for the sale and delivery of the goods.

We have then before us a contract made and to be performed in *New York*, between citizens of *Maryland* and citizens of *New York*, and it is now settled by the adjudications of the Supreme Court, that the discharge obtained by *Rogers & Frick* under the insolvent laws of *Maryland*, could not affect the right of *Berrien & Co.* to obtain against them in the *Maryland* courts, an absolute and unqualified judgment, and to place their execution upon any property of the insolvent debtors, to be found undistributed in the hands of their trustee.

In the case of *Cook vs. Moffat & Curtis*, 5 *How. Rep.* 295, it appeared that *Moffat & Curtis*, merchants of *New York*, sold goods to *Cook*, who was a merchant and resident of *Baltimore*; that on a settlement of their accounts, *Cook* transmitted his promissory notes to his attorney in *New York*, who delivered them to *Moffat & Curtis*, and that after the notes became due, *Cook* applied for and obtained the benefit of the insolvent laws of *Maryland*. An action was instituted against *Cook* in the Circuit Court for the District of *Maryland* on the common money courts. *Cook* pleaded his discharge under the *Maryland* insolvent laws, insisting that the contract was to be performed in *Maryland*, and governed by the laws of *Maryland* in existence at the time it was made, and that therefore his discharge under her laws was a good defence to the action.

The case was presented to the Circuit Court, upon an agreed statement of facts, and the court overruled the plea and gave an absolute judgment for the plaintiff. This judgment was affirmed by the Supreme Court at the January term, 1847. This case in its leading facts is strikingly similar to the one under consideration, and we refer to the opinion of the court, as con-

taining what must now be regarded as the final adjudication of the Supreme Court, upon a question, which has produced since it was first agitated, much conflict of opinion, and has given rise to many perplexing doubts.

*Mr. Justice Grier*, who delivered the opinion of the court, when speaking of the locality of the contract, at page 307 says—

" 'That the contract declared on in this case was to be performed in *Maryland*, and to be governed by her laws, is a position that cannot be successfully maintained, and was therefore very properly abandoned on the argument here. For although the notes purport to have been made in *Baltimore*, they were delivered in *New York*, in payment of goods purchased there, and of course, were payable there, and governed by the laws of that place." He says—

" That the question to be decided is, whether the bankrupt law of *Maryland* can operate to discharge the plaintiff in error from a contract made by him in *New York*, with citizens of that State?" He controverts the proposition that the opinion in *Ogden vs. Saunders* is liable to the imputation of having established the doctrine, that a State court would be justifiable in giving effect to a bankrupt discharge, which the courts of the *United States* would declare invalid, and affirms that such a decision has never been made by this court. Upon this subject his language is—

" The Constitution of the *United States* is the supreme law of the land, and binds every forum, whether it derives its authority from a State, or from the *United States*. When this court has declared State legislation to be in conflict with the Constitution of the *United States*, and therefore void, the State tribunals are bound to conform to such decision. A bankrupt law which comes within this category, cannot be pleaded as a discharge, even in the forums of the State which enacted it.

" It is true, that as between the several States of this Union, their respective bankrupt laws, like those of foreign States, can have no effect in any forum beyond their respective limits, unless by comity. But it is not a necessary consequence, that State courts can treat this subject as if the States were wholly

foreign to each other, and inflict her bankrupt laws on contracts and persons not within their limits." Again he says—

"Accordingly, we find that when in the case of *Sturgis vs. Crowninshield*, this court decided that a State has authority to pass a bankrupt law, provided there be no act of Congress in force to establish a uniform system of bankruptcy, it was nevertheless considered to be subject to the further condition, that such law should not impair the obligation of contracts within the meaning of the Constitution of the *United States*, art. 1, sec. 10. It followed as a corollary from this modification and restraint of the power of the State to pass such laws, that they could have no effect on contracts made before their enactment, or beyond their territory."

We have quoted largely from the opinion of the learned Judge in this case, because it contains the views of a court whose decisions upon all questions of constitutional law, are to be received as conclusive; and it appears to us, that the principles enunciated in that opinion clearly establish, that the provisions of the insolvent laws relied on by the counsel for the appellee as invalidating this transfer, can have no effect upon the rights of these creditors. In other words, to use the language of the court, in *Cook vs. Moffat*, the State of *Maryland* has no constitutional power to inflict her insolvent laws on contracts and persons not within her limits.

The counsel for the appellee have however contended, that the provisions of the *Maryland* insolvent laws, as contained in the sixth section of the act of 1816, ch. 221, and the first section of the act of 1834, ch. 293, are not open to the constitutional objection that has been urged against them, because they leave unimpaired the obligations of this contract. But it is impossible to maintain this proposition. What is the obligation of the contract in the sense in which this term is used, in the eighth section of the first article of the Constitution of the *United States?*

This question is to be answered by referring to the exposition which has been given to this clause of the Constitution, by the Supreme Court.

In *Sturgis vs. Crowninshield,* 4 *Wheat.* 197, the court said—
" It would seem difficult to substitute words, which are more intelligible, or less liable to misconstruction, than those which are to be explained. A contract is an agreement in which a party undertakes to do, or not to do a particular thing. The law binds him to perform his undertaking, and this is, of course, the obligation of his contract. In the case at bar, the defendant has given his promissory note to pay the plaintiff a sum of money on or before a certain day. The contract binds him to pay that sum on that day; and this is its obligation. Any law which releases a part of this obligation, must, in the literal sense of the word, impair it. Much more must a law impair it which makes it totally invalid, and entirely discharges it."

In *McCracken vs. Hayward,* 2 *How.* 612, *Mr. Justice Baldwin* said—
" In placing the obligation of contracts under the protection of the Constitution, its framers looked to the essentials of the contract more than to the forms and modes of proceeding, by which it was to be carried into execution; annulling all State legislation which impairs its obligation, it was left to the States to prescribe and shape the remedy to enforce it. The obligation of the contract consists in its binding force on the party who makes it."

*Mr. Justice Story,* in his Conflict of Laws, section 226, says:
" The obligation of a contract is the duty to perform it whatever may be its nature. It may be a moral obligation, or a legal obligation, or both. But when we speak of obligation generally, we mean legal obligation—that is, the right to performance, which the law confers on one party, and the corresponding duty of performance, to which it binds the other."

What was the obligation of this contract? It was the duty imposed by law upon *Rogers & Frick* to pay *Berrien & Co.* for the merchandise they had purchased, in money, or in goods, if goods were accepted by the creditors as an equivalent for money. It was decided in *Gregory vs. Mack,* 3 *Hill, N. Y. Rep.* 384,—" That when the parties have agreed on a particular thing as a medium of payment, whether it be lands, goods

or labor, and the agreement has been carried into execution, it is the same thing in legal effect, as though the like sum had been paid in money." *Smith on Mercantile Law*, 530.

Now we find that *Rogers & Frick*, in fulfilment of this obligation, transferred to *Berrien & Co.* on the 12th of May, 1841, the property sought to be recovered, in payment of their indebtment, and that it was so received and accepted by *Berrien & Co.* And can it be maintained, that a law which invalidates this transfer, annuls this payment, takes from the creditors the property which they had fairly acquired in the exercise of a right conferred upon them by the common law, and places it in the hands of the trustee, to be distributed exclusively among the domestic creditors of the insolvent debtors, unless the foreign creditors will take their dividend upon the humiliating condition of surrendering their acknowledged constitutional privilege to object to the insolvent's discharge,—is not a law impairing the obligation of the contract? We think not. A proposition of this kind cannot be maintained.

The true view of the case is, that the right of these creditors to obtain a preference over the other creditors of the insolvent, and the privilege of the debtors to give this preference, stands precisely as if these insolvent laws were not to be found among the statutes of the state. And under circumstances, no exception could be taken to the validity of this transfer. In the case of *Hickley vs. The Farmers & Merchants Bank*, 5 *G. & John.* 380, the Court of Appeals recognize the principle :—

" That by the common law, and apart from the provisions of the insolvent laws of this state, the debtor may secure one creditor to the exclusion of others, either by payment, or by a *bona fide* transfer of his property."

The late bankrupt law of the *United States* was passed on the 19th of August, 1841 ; but it was expressly provided by the seventeenth section of the statute, that it should take effect only from and after the first day of February, 1842. This is equivalent to declaring that the act should have no effect until that day; and therefore, there is no foundation for the point made by the counsel for the appellant : that the insolvent laws

56    v.5

of *Maryland* were suspended in their operation by the bankrupt act of the *United States*, at the period when the proceedings of *Rogers & Frick* under those laws were commenced, and consummated. At that time, the bankrupt act was not in force, and there could have been no conflict between the national and state legislation upon this subject.

In *Ex Parte, Eames,* 2 *Story Rep.* 325, *Mr. Justice Story said:*
"That as soon as the bankrupt act went into operation, in February, 1842, it *ipso facto* suspended all action on future cases, arising under the state insolvent laws, where the insolvent persons were within the purview of the Bankrupt Act. I say future cases, because very different considerations would or might apply, where proceedings under any state insolvent laws were commenced, and were in progress before the bankrupt act went into operation. It appears to me, that both systems cannot be in operation, or apply at the same time to the same persons; and where the state and national legislation, upon the same subject, and the same persons, come in conflict, the national laws must prevail, and suspend the operation of the state laws. This as far as I know has been the uniform doctrine maintained in all the courts of the *United States.*"

In the argument of this cause various other points were raised and discussed by the counsel, upon which it has become unnecessary to express an opinion, as the views we have taken of the insolvent laws of Maryland dispose of the whole case.

We think the court below erred in the instructions given by them to the jury, and that their judgment must be *reversed.*

**JUDGMENT REVERSED.**