## Case No. 11,722.

### In re REYNOLDS.

[See Case No. 11,721.]

---

## Case No. 11,723.

### In re REYNOLDS.

[9 N. B. R. (1874) 50.] [1]

Circuit Court, D. Rhode Island.

BANKRUPTCY — STATE INSOLVENT LAW—CONSTITUTIONAL LAW.

The passage of a bankrupt law for the United States suspends the state insolvent law in force at the time of its passage, in so far as the provisions of the bankrupt law cover the subject matter of the provisions of the state insolvent law.

[Approved in Globe Ins. Co. v. Cleveland Ins. Co., Case No. 5,486.]

The creditors appearing to oppose the petition of Gideon Reynolds for the benefit of the insolvent law of the state, filed a motion to dismiss the petition upon the ground that the jurisdiction of the court over such cases had ceased to exist after the passage of the bankrupt law of the United States in 1867 [14 Stat. 517], it being apparent upon the record that the petitioner's debts exceeded three hundred dollars.

James Tillinghats for creditors.

1st. The exercise by congress of its constitutional powers to establish a uniform law

---

[1] [Reprinted by permission.]

upon the subject of bankruptcies throughout the United States, supersedes state legislation upon the same subject. Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122; Ex parte Eames [Case No. 4,237]; Griswold v. Pratt. 9 Metc. [Mass.] 16; Com. v. O'Hara [6 Phila. 402]. See per Shaw, C. J., May v. Breed, 7 Cush. 40.

2d. State insolvent laws which discharge the person of the debtor from arrest only, as well as those which discharge the debt, are suspended by the act of congress; there is no real distinction between them in this respect. See above cases; also, 3 Story, Const. §§ 1100–1110; 2 Kent, Comm. 370 et seq.; Hill Bankr. p. 11, § 21. Compare Adams v. Storey [Case No. 66], where the New York act of April, 1811, is held to be an insolvent act, with Blanchard v. Russell, 13 Mass. 4, where it is stated by Parker, C. J., to be clearly a bankrupt act, and with Sturges v. Crowninshield; 4 Wheat. [17 U. S.] 122, where Marshall, C. J., expressly declines to decide which it is, whether an insolvent or a bankrupt act.

W. Hays and C. Matteson, for petitioner, cited: Ex parte Eames [supra]; Griswold v. Pratt, 9 Metc. [Mass.] 16; Sturges v. Crowninshield, 4 Wheat [17 U. S.] 122; Ogden v. Saunders, 12 Wheat. [25 U. S.] 213; Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 194.

BRADLEY, Circuit Justice. This is a motion to dismiss the petition of Gideon Reynolds for the benefit of the insolvent law of the state, upon the ground that this law, in its operation in favor of insolvents whose debts exceed the sum of three hundred dollars, was suspended by the passage of the bankrupt law of the United States now in force. The decision of the motion upon this ground depends upon the construction of the provision of the constitution of the United States which declares that "the congress shall have power to establish uniform laws upon the subject of bankruptcies throughout the United States." Article 1, § 8. In considering this question of an alleged conflict of these laws, we naturally inquire first, whether the provision of the constitution which we have quoted confers the power upon congress to the exclusion of a similar power in the states. If it does not prohibit the power in the states absolutely, does it limit the exercise of that power either to time or subject, when, and upon which, congress has not legislated? or does it restrain the laws of the state only from acting upon those cases upon which the law of the United States may be called into exercise? And if the two jurisdictions thus come in conflict in particular cases, is that which is prior in time to prevail, or that of the United States by any paramount power conferred on it by this clause of the constitution? Another class of inquiry arises as to the scope and extent of legislative power conferred upon congress, in the phrase "subject of bankruptcies."

The first class of these questions was early determined by the supreme court of the United States in Sturges v. Crowninshield, 4 Wheat. [17 U. S.] 122. It is not the mere existence of the power (they say) but its exercise, which is incompatible with the exercise of the same power by the states. It is not the right to establish these uniform laws, but their actual establishment, which is inconsistent with the partial acts of the states, and they decided "that until the power to pass uniform laws upon the subject of bankruptcies be exercised by congress, the states are not forbidden to pass a bankrupt law." Mr. Webster, in his argument in Ogden v. Saunders, 12 Wheat. [25 U. S.] 213, said: "The argument used in Sturges v. Crowninshield [supra] maintained that the prohibition of the constitution was leveled only against interference in individual cases, and did not apply to general laws," yet the court rejected that conclusion and also held "that the provision of the constitution in question did not exclude the right of the states to legislation on the same subject, except when the power is actually exercised by congress, and the state laws conflict with those of congress." To state the decision precisely in the language of the certificate in the first case, and as reaffirmed in the second, we find the law to be "that a state has authority to pass a bankrupt law, provided there be no act of congress in force to establish a uniform system of bankruptcy conflicting with such law." In Hoyle v. Zacharie, 6 Pet. [31 U. S.] 638, the court say: "These decisions are final and conclusive."

We come, then, to the second inquiry: What is the extent and scope of the power of congress, by force of the provision, to legislate upon the subject of bankruptcy? Does it include the power to legislate upon insolvency as defined in the law? The bankruptcy statutes and the insolvency statutes of England provided respectively:

First. The bankrupt process was moved by creditors against certain classes of debtors for a distribution of the bankrupt's property among all the creditors through the officers of the court, and it provided for a discharge of the debt as well as the person of the bankrupt.

Second. The insolvent laws authorized the debtor, and a much larger class of debtors, including those liable to proceedings in bankruptcy, to move the process for such distribution of his property, but discharged only the person of the debtors and did not discharge the debt. The case of Jellis v. Mountford, 4 Barn. & Ald. 256, illustrates the operation of these two systems upon one and the same person in England.

The bankrupt law of 1841 [5 Stat. 440] was the first one passed by congress which introduced the system of an insolvent law in conjunction with that of bankruptcy, as exercised in English statutes. The constitutionality of the law of 1841 was contested upon this ground. It was claimed that the

insolvency provisions of that law were not authorized by the constitutional power to pass laws upon the subject of bankruptcies. The cases of Kunzler v. Kohaus, 5 Hill. 317, and Sackett v. Andross [Id. 327], in the opinion of Cowen, J., sustaining the law (Nelson, C. J., concurring in the decision), and of Bronson, J., contra, exhibit the grounds of this controversy with great fullness and eminent ability. The court decided that the grant of power in the constitution was intended to be as broad as the subject itself, and that it was not limited to the statute modes in which that power had been theretofore exercised by parliament. They, therefore, sustained the voluntary insolvent part of the law. The broadest interpretation of the clause seems to have prevailed in the country, throughout the various circuits, in the opinions of the circuit judges, as the supreme court had held that, under that law, questions could not be taken to that court, either upon certificate of division of opinion, or on appeal, or writ of error.

Nelson v. Carland, 1 How. [42 U. S.] 265. The judges of that court seemed to have concurred in the opinion of Catron, J., in a note to the preceding case—Klein's Case [Case No. 7,865]. He held that the subjects of bankruptcies spoken of in the constitution was a subject of extensive and complicated jurisdiction; that "it extends to all cases where the law causes to be distributed the property of the debtor among his creditors; this to its least limit. Its greatest is a discharge of the debtor from his contracts; and all intermediate legislation affecting substance and forms, but tending to further the great end of the subject, distribution and discharge, are in the competency and discretion of congress." He further says: "I deem every state law a bankrupt law, in substance and fact, that causes to be distributed by a tribunal the property of a debtor among his creditors, and it is especially such if it causes the debtor to be discharged from his contract, within the limits prescribed by the case of Ogden v. Saunders [supra]. Such a law may be denominated an insolvent law. Still it deals directly with the subject of bankruptcies, and is a bankrupt law in the sense of the constitution, and if congress should pass a similar law, it would suspend the state law while the act of congress continued in force."

Story, J., in Ex parte Eames [Case No. 4,237], held, in a case of conflict of title, under the state insolvent law of Massachusetts and the bankrupt law of 1841 that the title under the state law must give way to the paramount title derived from proceedings in bankruptcy. That state law, containing the involuntary as well as voluntary provisions, and discharging the debt as well as the person, was in every sense, though not in name, a bankrupt law; and in the collision occurring in carrying out the provisions of the different systems, the decision was, under the authority we have considered, inevitable. But the judge goes further and declares that, as to the proceedings in future cases, "both systems cannot be in operation, or apply at the same time to the same persons, and where the state and national legislation, upon the same subject and the same persons, come in conflict, the national laws must prevail and suspend the operation of state laws. This, so far as I know, has been the uniform doctrine maintained in all the courts of the United States." And after citing the cases of Sturges v. Crowninshield and Ogden v. Saunders, he says, in conclusion: "The moment that the bankrupt act does or may operate upon the person or case, that moment it virtually supersedes all state legislation."

In the case of Griswold v. Pratt, 9 Metc. [Mass.] 16, the court fully consider the question "whether the enactment of a bankrupt law does ipso facto suspend and abrogate, during the continuance of such law, all general insolvent laws of the several states, so far as they have reference to future cases, and are applicable to the same persons, the same contract, and the same assets as are made subject to proceedings under the bankrupt law." And they decide that question in the affirmative, as applicable to the insolvent law of Massachusetts, "considering (they say) our state insolvent law to be a system introduced for the purpose of sequestering the effects of an insolvent debtor, and of discharging him from all debts contracted after the passage of the law, we are satisfied that the two systems cannot stand together," and that the bankrupt law suspends the state law.

The courts of Maryland came to the same conclusion in regard to the insolvent laws of that state. In the case of Larrabee v. Talbott, 5 Gill, 426, the court, quoting fully from the opinion of Story, J., in Ex parte Eames [supra], decide that the bankrupt law of 1841 "did not suspend the operation of the state insolvent laws until the day it went into effect."

So, in Louisiana, the courts, speaking of their insolvent system, wherein a debtor makes his cessio bonorum to a judge for the benefit of creditors, and syndics are appointed to distribute the property, say: "This power was specially delegated to congress and only reserved by the several states in so far and so long as congress did not see fit to exercise it. The moment they exercised the power the state laws upon the subject became inoperative and were suspended." A similar decision is reported—Com. v. O'Hara [6 Phila. 402]—in Pennsylvania by the district court for the Alleghany district, with the concurrence of the judges of the common pleas of that state, upon the insolvent laws of that state, which only discharged the debtor from imprisonment, and did not release the debt.

The court in North Carolina seems to have taken a different view in the Ziegenfuss Case, 2 Ired. 463. We have not been able to examine the opinion, nor have we been referred to, or found any other decision concurring with it.

Our state insolvent law authorizes, upon the application of the debtor, proceedings for the distribution of his property only, and the discharge of his person from imprisonment. It does not release the debt. The bankrupt law of 1867 does all this upon such application, and also releases the debt. Assuming the constitutionality of the bankrupt law in other respects, which has neither been discussed or denied before us, we must hold that, under the decisions and concurring practice to which we have referred, these provisions of the bankrupt law authorizing a debtor to apply for and obtain a discharge of his debts, and providing for a distribution of all his property among all his creditors, are within the legislative power of congress under this grant in the constitution; the system, differing in this department only from our insolvent law in extending the release, but not at all in the provisions for taking possession, though officers appointed by the court, of the entire property of the insolvent, and distributing it among all his creditors, covers all the provisions of our insolvent law. It legislates for all of them, and for more in its voluntary department, and adds thereto the involuntary department of the law enabling creditors to move for all these processes against the debtor in their own behalf. We must, therefore, find that congress has, within its constitutional powers, legislated upon the entire subject of our insolvent laws. And such legislation, it has long been settled, when exercised, suspends the state legislation upon the same subject. We must, therefore, grant the motion.

We may remark that this decision does not cover the law of the state for the discharge of poor debtors from imprisonment. Such laws in this state were adjudged constitutional in the case of Mason v. Hall, 12 Wheat. [25 U. S.] 370, by the supreme court, after the decisions in Sturges v. Crowninshield and Ogden v. Saunders had been rendered.