EDWARD OWENS and JOHN S. OWENS, Surviving Partners of OWEN, EVANS & Co., *vs.* ROBERT BOWIE and ROBERT W. BOWIE, Garnishees of OSBORNE SPRIGG, and C. C. MAGRUDER, Permanent Trustee of OSBORNE SPRIGG.

The plaintiffs, citizens of the District of Columbia, sold goods in that district to the defendant, a citizen of Maryland, for which the latter gave his promissory note, executed in Maryland. A judgment was recovered on this note in Prince Georges county court in this State, and on this judgment an attachment was issued before, and was levied upon the assets of the defendant after, his application for the benefit of the insolvent laws of this State. HELD:

That the discharge of the defendant under the insolvent laws of this State, did not impair the right of the plaintiffs, as non-resident creditors upon their said judgment, to obtain by attachment or execution thereon a preference over domestic judgment creditors.

The goods having been purchased in the District of Columbia from citizens of that district, the contract is to be considered as a District of Columbia contract, and the fact that a promissory note was subsequently executed in Maryland by the defendant as evidence of his indebtedness, does not alter the locality of the contract.

The case of *Larrabee vs. Talbott*, 5 *Gill*, 426, decides not only that a non-resident creditor may recover an absolute judgment in the courts of this State on a foreign contract, in opposition to an insolvent discharge, but may levy an execution on such judgment upon any property of the insolvent to be found undistributed in the hands of his trustee.

Though there was no judgment recovered upon the contract in the case of *Larrabee vs. Talbott*, yet the principles of the decision in that case are correct.

The cases of *Boyle vs. Zacharie and Turner*, 6 *Pet.*, 643; *Woodhull and Davis, vs. Wagner*, 1 *Baldwin's Rep.*, 296, and *White, Warner & Co., vs. Winn and Ross*, cited in 8 *Gill*, 449, being decisions upon judgments recovered in the United States courts, sustain the decision in the case of *Larrabee vs. Talbott*.

Whilst the courts of the United States follow the decisions of the State tribunals in regard to State laws not unconstitutional, the State courts are bound by the adjudications of the Supreme Court upon all questions arising under the constitution of the United States.

Where the plaintiff is a non-resident, and his original claim was to have been executed beyond the limits of the State in which the judgment was rendered and the defendant obtained his discharge, there is no difference as to the right to levy by execution on the property of such insolvent defendant,

whether the judgment on which the process is issued be rendered in a State court or a circuit of the United States.

If the case of *Green vs. Sarmiento*, 3 *Wash. C. C. Rep.*, 17, is to be considered as announcing the doctrine, that a judgment so completely extinguishes the contract on which it is founded; that the judgment becomes the contract, and therefore the place of the judgment is the place of the contract, and that the original contract cannot be looked to as having any effect or influence on the rights of the parties, it is in conflict with other authorities and cannot be adopted by this court.

Where there has been a judgment, the original contract may be looked at for a purpose not inconsistent with the validity of the judgment, but designed to carry it into effect.

Though a judgment is, to some purposes, a merger of the original contract, and constitutes a new debt, yet when the essential rights of the parties are influenced by the nature of the original contract, the court will look into the judgment for the purpose of ascertaining what the original contract was.

But neither party can go behind a judgment for the purpose of attacking or impeaching it by pleading, in a collateral action.

The case of the *Bank of the U. S. vs. The Merchants Bank of Balto.*, 7 *Gill*, 434, adopts the principle, that a judgment so far extinguishes the original cause of action as to prevent a second judgment from being recovered upon it in another suit at law, but does not decide that the contract is extinguished in every case for all purposes.

If a bond be given for the purchase money of land, and a judgment rendered on it, after the obligor had conveyed his interest in the land, and the obligee should exhaust all his remedies at law without obtaining payment, it cannot be doubted that he may file a bill in equity upon the bond to enforce his vendor's lien.

The attachment upon the judgment in this case is not a second suit on the original cause of action, but an execution to compel payment.

The case in 7 *Gill*, 434, only adopts *authoritatively* the doctrine, that a judgment so merges the cause of action on which it is based, that a subsequent suit cannot be maintained upon it.

When the contract in this case was entered into, the constitution of the United States protected it from being in any degree affected by insolvent proceedings in this State, and this protection followed it into and formed part of the judgment.

To decide that the insolvency of the defendant will not prevent a condemnation under the attachment, is not to impair the judgment or deny its conclusiveness, but to affirm its power, and afford the plaintiffs the full benefit of the constitutional protection to which they were entitled at the inception of the contract.

It was not the intention of the constitution of the United States to protect the foreign contract of a non-resident creditor until there is a judgment upon it, and that then the protection should cease.

The case of *Glenn vs. Gill, ante,* 17, simply decided that funds in the hands of a receiver appointed by the chancellor, before either of the parties had applied for the benefit of the insolvent laws, could not be attached, and is based upon the decision of the circuit court of the United States for this district, deciding that the funds in the hands of the *same receiver* could not be attached.

In regard to non-resident creditors, our insolvent laws are considered as nullities, and as the insolvent's trustee acquires all his rights under those laws, he can have no rights in opposition to those of such creditors.

The language of the court in the case of the *Bank of Delaware vs. Beaston,* 7 *G. & J.,* 428, that effects in the hands of a trustee of an insolvent debtor cannot be attached, is not a binding authority upon the point, because that question did not necessarily arise in that case, and is in direct opposition to *Larrabee vs. Talbott,* and *White, Warner & Co. vs. Winn and Ross.*

The unconstitutionality of the insolvent laws in reference to non-resident creditors was necessarily involved in the case of *Larrabee vs. Talbott,* and being about to decide in favor of the creditors claiming adversely to the laws, it was consistent for the court to hold that such claimants might obtain in a Maryland court an absolute and unqualified judgment, and levy their execution upon any property of the insolvent debtor remaining in the hands of his trustee.

The decision of Judge Woodbury, in 2 *Woodbury and Minot's Rep.,* 449, is in conflict with *Larrabee vs. Talbott,* and *White, Warner & Co., vs. Winn and Ross,* and is contrary to the decisions of the Supreme Court declaring State insolvent laws void as against non-resident creditors.

The same decision is also at variance with that class of cases by which it has been settled, that if a creditor whose claim is protected against insolvent proceedings shall voluntarily make himself a party to, or claim under them, he will, in all respects, become subject to the laws by which they are regulated.

The insolvent proceedings in this case being inoperative as against the claim of the plaintiffs, it does not matter whether the attachment actually came into the hands of the sheriff, and was levied before or after the insolvent's petition, and being levied before the attachment of the other non-resident creditors it is entitled to a priority over them, in reference to the same assets levied upon by each.

APPEAL from Prince Georges county court.

This was an *attachment* upon a judgment in favor of the appellants, (the plaintiffs below,) against the appellee, Sprigg, rendered in Prince Georges county court. The attachment was laid in the hands of Robert Bowie and Robert W. Bowie, who were summoned as garnishees. The case was submitted to the court below upon an agreed statement of facts, in sub-

stance as follows:   It is agreed, that the plaintiffs and one
Evan Evans, since deceased, were, in 1843, at the date of
the rendition of the judgment on which the attachment issued,
citizens of the District of Columbia, and have so continued
up to the present time.   That the promissory note sued on in
the original judgment against Sprigg was executed in Mary-
land, the consideration thereof being goods, wares and mer-
chandise, furnished said Sprigg in Washington city, in the
District of Columbia, by the plaintiffs in said judgment, who
were, during the period of the contracting of said debt, and
up to the present time have been, citizens thereof.   That the
attachment was issued on the 1st day of December 1846, and
on that day placed in the hands of the sheriff.   That Sprigg
applied for the benefit of the insolvent laws on the 2nd of
December 1846, and on that day conveyed all his property to
C. C. Magruder, his trustee, and was finally discharged on
the first Monday of April 1847.   That said garnishee, Robert
Bowie, at the time of the issuing of said attachment, owed
Sprigg about $3000.   That the attachment was laid in the
hands of said garnishees sometime after the 2nd of December
1846, and before the 1st Monday of April 1847, and they
were duly summoned and appeared to the attachment.   That
Bowie had not paid the debt due by him to Sprigg by the
said first Monday of April 1847, but he has since paid the
larger part thereof to Sprigg's trustee, and that $1500, part
thereof, is still in the hands of said trustee.   That this debt
consisted of the transfer of a judgment which Robert W.
Bowie had against said Robert Bowie, and was placed in the
hands of Sprigg's trustee on the 2nd of December 1846.   It
was further agreed, if upon this statement of facts the court
should be of opinion that Sprigg's discharge did not affect
the debt of the plaintiffs, and that they are to be entitled to
the whole amount of their judgment, in exclusion of the do-
mestic creditors of Sprigg, who are numerous, then the court
shall give judgment for the plaintiffs to the full amount of their
claim, with interest, &c., but if the court should be of opinion
that the plaintiffs are not entitled to such preference over the

resident creditors and domestic contracts of Sprigg, then judgment shall be for the defendant.

It was further admitted, that certain other non-resident creditors of Sprigg had, in 1842, obtained judgments against him upon certain notes and causes of action executed in the District of Columbia, and which were to be performed there, and have issued attachments on their said judgments, returnable to April term 1850 of Prince Georges county court, which attachments have been laid in the hands of said trustee of Sprigg and levied upon the said trust fund in his hands, and the question is submitted to the court, whether the judgments of the plaintiffs are to be preferred to these last mentioned judgments, in the distribution of said funds in the hands of said trustee? It was further admitted that Sprigg, at the time of his petition, owed a large amount in judgments to domestic and foreign creditors, and that the funds in the hands of his trustee are insufficient to pay his said judgments.

The court being of opinion that the plaintiffs were not entitled to recover, gave judgment for the defendants, from which the plaintiffs appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and MASON, J.

The court being of opinion that the principle involved in this case, had been decided in the case of *Larrabee vs. Talbott*, 5 *Gill*, 426, said they would hear the argument for the appellees first.

*C. C. Magruder* for the appellees.

1st. The appellants having sued in a State court and recovered a judgment, their original cause of action was extinguished, and they are not entitled to a preference over domestic creditors of the insolvent in the distribution of his assets in the hands of his trustee. When they seek to enforce a judgment recovered in a court of this State, they are not entitled to a preference as foreign creditors. This case is

clearly distinguished from the case of *Larrabee vs. Talbott*, and the principle there decided does not affect it. In that case the creditors were residents of New York, and the contract was a contract made in that State, and the *contract itself* was there the subject of suit. It was not merged by a judgment as here. In this case the parties have waived the right of standing on their contract, which, with all its attributes, was merged by the judgment in a court of this State. The opinion of the court in 5 *Gill*, 436, shows that it was upon the ground that the contract was a New York contract, that that case was decided. Here the contract was merged by the judgment, and it thereby lost the protection extended to it by the constitution of the United States. Where do the plaintiffs get the right to reap the fruits of their judgment? Surely it flows from the statutory provisions of this State. The judgment merges the contract, and it cannot be noticed in any question to which it (the contract) might have previously given rise. 3 *Wash. C. C. Rep.*, 17, 20.

Our own courts have decided, that the judgments of the courts of sister States are conclusive upon all questions relating to the merits of the cause, and merge the original causes of action. 7 *Gill*, 415, 434. This case in 7 *Gill*, affirms the case in 3 *Wash. C. C. Rep.*, 17, and shows that the place of the judgment is to be regarded as the place of the contract. The locality of the debt is in this State—the judgment makes it so. Not only so, but the plaintiffs are seeking to enforce their judgment by virtue of process under the laws of this State, the regulation of which belongs exclusively to this State.

2nd. The insolvent having petitioned for a discharge under the insolvent laws of this State, and having obtained a personal discharge before the attachment was laid in the hands of the garnishee, the debt due by the garnishee was transferred to the trustee of the insolvent, to be distributed among his creditors according to the insolvent system of this State, and the appellants could not acquire a preference by the issuing and levying their attachment. The act of 1805, ch. 110, transfers the property of an insolvent to his trustee immedi-

ately upon his application.  The case of *Alexander vs. Ghiselin* decides this.  See also 13 *Pet.*, 312.  The property was in the hands of the trustee at the time the attachment was levied, subject to the jurisdiction which granted the discharge, and was not liable to process from any other tribunal.  2 *Md. Rep.*, 1, *Glenn vs. Gill.*

*Thomas F. Bowie* on the same side.

It is admitted, that the *lex loci* governs in the case of a contract made in another State to be executed there.  In the absence of the exercise by Congress of the power to pass a general bankrupt law, the States have the power to pass bankrupt or insolvent laws, but these laws are only to affect their own citizens, and contracts made in their own jurisdictions.  Where the contract is made here, and to be performed here, it is subject to the laws of this State, and a party cannot shelter himself under the mere fact that he is a resident of another State.

In the case of *Larrabee vs. Talbott*, the suit was on the original contract, and the parties there relied upon the general principles of international law, and upon the constitution of the United States, which makes void all laws impairing the obligation of contracts.  If they had sued on the notes and obtained judgments on them in this State, they would then have been Maryland contracts, subject to the discharge of the debtor under the insolvent laws of this State.  By his judgment he becomes a judgment creditor within the laws of this State.  There is no provision in the constitution of the United States which places a foreign judgment creditor upon a better footing than a domestic judgment creditor.

The plaintiffs must come as creditors, with a living, vital contract, still existing, not one merged by a judgment.  The test of a foreign contract is, whether it is to be performed or executed in a foreign state.  A judgment merges the contract—it is dead and has no longer the attributes of a contract, and the parties cannot come seeking to avail themselves of any of the protections of contract creditors.  The judgment must be enforced by State laws, and they cannot rely upon

the provisions of the constitution of the United States. They must be regarded as simple judgment creditors. In 11 *G. & J.*, 11, *Moale vs. Hollins*, Judge Dorsey says, that a judgment extinguishes the simple contract. The same law is laid down in 4 *H. & J.*, 357; 10 *G. & J.*, 247; 3 *Bland*, 284.

The opinion of Judge Taney, in the case of *White vs. Warner & Co.*, in 8 *Gill*, has nothing to do with this case. That was an attachment sued out of a federal court upon a judgment obtained in that court by foreign creditors, and is not therefore analogous to the present case.

*Causin* for the appellants, in reply:

A judgment does not merge the *residence* of the parties, and this is the test whether the contract be protected by the constitution of the United States or not. 2 *Kent*, 476. *Story's Conflict of Laws*, sec. 341. *Story's Com. on the Constitution*, sec. 1390. 6 *Wheat.*, 131. 12 *Wheat.*, 213, 233, 369.

The term contract, used in the constitution of the United States, means any right that the party has which is legal and moral. 3 *Story's Com. on the Constitution*, secs. 1370, 1115, 1390. A judgment is nothing more than a record obligation to pay, it is a contract still.

The party is foreign to the power that passes the laws, and this is the principle that runs through all the cases. 5 *Howard*, 307.

The argument on the other side would lead to this result, that if a party holds a note he is protected by the constitution of the United States, but the moment he attempts to get his remedy by a judgment he loses this protection. This cannot be so.

But this is not an open question in this State. The same rule operates in the United States courts as in the State courts. 4 *G. & J.*, 520. 6 *Peters*, 635, *Boyle vs. Zacharie*. 1 *Baldwin*, 302. 1 *Md. Ch. Decisions*, 278, *Kerr vs. Potter*.

ECCLESTON, J., delivered the opinion of the court.

The appellants and Evan Evans, who has since died, sold

and delivered goods to Osborn Sprigg, in the city of Washington, in the District of Columbia, for which a promissory note was executed in Maryland. In 1843 a judgment was obtained upon this note in Prince Georges county court, by the appellants and Evan Evans against Osborn Sprigg, on which judgment an attachment was issued the 1st of December 1846, and sometime after the 2nd day of that month, and prior to the first Monday of April 1847, was laid in the hands of R. Bowie and R. W. Bowie, who were summoned and appeared as garnishees. Osborn Sprigg applied for the benefit of the insolvent laws on the 2nd of December 1846, on which day he conveyed all his property to C. C. Magruder, his trustee, and was finally discharged on the first Monday of April 1847. When the attachment issued the garnishee, R. Bowie, owed to Sprigg more money than was sufficient to pay the claim of the plaintiffs. After the first Monday of April 1847, a large portion of the debt due from R. Bowie was paid to the trustee of the insolvent. This debt was a judgment transferred by Robert W. Bowie to O. Sprigg, which transfer was placed in the hands of his trustee on the 2nd of December 1846. The plaintiffs, Edward and John Owens, were citizens of the District of Columbia at the time of selling the goods, and so continued to be up to the issuing of this attachment. Evan Evans was likewise a citizen of said district when the sale was made, and resided there until his death.

In argument two questions were presented:—1st. Allowing the original contract to have been made in the District of Columbia, and there to be fulfilled, notwithstanding the promissory note was executed in this State, and a judgment obtained upon that note in a Maryland court, the plaintiffs being citizens of the District of Columbia and the defendant a citizen of this State, whether, by an attachment on that judgment levied upon the assets of Sprigg, after his petition for the benefit of the insolvent laws, the plaintiffs acquired any preference over domestic judgment creditors?

2nd. Conceding that the discharge of the insolvent did not

impair the right of the non-resident creditors upon judgment in the State court, to obtain, by attachment or execution, a preference over domestic judgment creditors, did the appellants, under the circumstances of this case, acquire such a right to the funds attached by them, in consequence of the priority of their attachment, as gave them a preference over the attachments of the other non-resident creditors named in the agreement or statement of facts set out in the record?

In discussing the first question, we understood the argument on behalf of the appellee as conceding, that the contract on which the original judgment was founded, was to be considered as a District of Columbia contract. Any other view of the subject would be in conflict with the decisions in *Frey vs. Kirk*, 4 *G. & J.*, 509; *Boyle vs. Zacharie and Turner*, 6 *Pet. R.*, 643; *Cook vs. Moffatt and Curtis*, 5 *How. R.*, 307; and *Larrabee vs. Talbott*, 5 *Gill*, 435. It was contended, however, that although in a suit upon such a contract, a discharge under our insolvent laws could not prevent the recovery of an absolute and unqualified judgment, yet when that is rendered in a court of this State, the original contract is thereby extinguished for all purposes, and the judgment is then a Maryland contract, and as such, subject to our insolvent laws.

Not only is the right to obtain an absolute judgment on a contract of this sort, in opposition to an insolvent discharge, fully and distinctly announced by the learned judge, in *Larrabee vs. Talbott*, at *page* 437; but the authority to place an execution under such judgment upon any property of the insolvent debtor, to be found undistributed in the hands of his trustee, is also clearly stated. These principles, if admitted to be correct, sustain the claim of the present appellants. But it has been said by the appellee's counsel, that there was no judgment in that case; and the facts did not call for such a decision. Admitting this to be so, still if the doctrine advanced be correct, we should feel ourselves as much bound to yield our assent as if the decision had been made upon matters directly in issue. The principles alluded to are introduced by the judge, as having been "settled by the adjudica-

tions of the Supreme Court," and we can have no better authority, especially on questions arising under the constitution of the United States.

In *Boyle vs. Zacharie and Turner*, it was insisted on the part of the defence, that the contract on which the judgment was rendered, was a Maryland and not a Louisiana contract: it was held, however, to be the latter. In that case a judgment was obtained in this State in the circuit court of the United States, the plaintiffs being citizens of Louisiana. On the 23rd of December 1819, the suit was instituted. On the 31st of the same month, Boyle, the defendant, applied for the benefit of the insolvent laws of Maryland, and was eventually discharged. On the 1st of May 1821, judgment was confessed, and, by consent of parties, the following memorandum was entered of record: "The judgment subject to the legal operation of the defendant's discharge under the insolvent laws of Maryland." The judgment was once renewed by *scire facias*, and eventually a *fi. fa.* was issued and levied upon a ship belonging to Boyle. He then filed a bill for an injunction to prevent the sale of the ship. The principal ground relied upon was, that this property was exempted from the levy, by his discharge as an insolvent. The injunction was granted, but when the answer came in, it was dissolved and the bill dismissed, which decision the Supreme Court affirmed. Here we have a judgment obtained in Maryland, by non-residents, upon a *Louisiana contract*, enforced against a citizen of this State discharged by our insolvent laws.

In *Woodhull and Davis, vs. Wagner*, 1 *Baldwin's Rep.*, 296, a judgment was obtained in Pennsylvania, in the circuit court of the United States, upon a New York contract. The defendant was arrested under a *ca. sa.*, and applied for his release, in consequence of having been discharged under the insolvent laws of Pennsylvania. The application was resisted, upon the ground that the debt was contracted in New York, upon which the discharge had no effect. This view being sustained by the court, the defendant was remanded to custody.

This question came before the present distinguished chief

justice of the Supreme Court, in the case of *White, Warner &*
*Co., vs. Winn and Ross.* The material facts may be found
stated in *Kettlewell vs. Stewart,* 8 *Gill,* at *page* 499; then
follows the opinion. For the present purpose it is sufficient
to say, that the plaintiffs, who were citizens of Pennsylvania,
obtained a judgment in the circuit court of the United States
in Maryland, against Jones, on the 15th of January 1847,
who had applied for the benefit of the insolvent laws. Upon
this judgment an attachment was issued, and laid in the hands
of Winn and Ross, who were the permanent trustees of Jones,
the insolvent. The question being whether the plaintiffs were
entitled to condemnation of the property under their attach-
ment, the chief justice says, on page 501: "'They may assert
their remedy against property in the hands of the permanent
trustees, over which the insolvent had a control at the time
of his application, and which, but for his application, might
have been subjected to their execution." But the property
attached did not belong to Jones at the time of his application.

On the 26th of October 1846, Jones had conveyed all his
property to Winn and Ross in trust, to pay his creditors, giv-
ing preference to such as should release him. This deed,
the plaintiffs insisted, was void under the *statute of* 13 *Eliz.*
The court, however, thought otherwise, but was of opinion,
that under the facts admitted, the conveyance created undue
and improper preferences within the meaning of the act of
1834, ch. 203, and that the property thereby conveyed had
vested in Winn and Ross, as permanent trustees of Jones.
It thus appears, that independently of our insolvent system
the deed of October was valid. If then the plaintiffs thought
proper to call to their aid the insolvent laws, for the purpose
of invalidating the deed, they could only do so upon the terms
of submitting to the distribution of the insolvent's assets,
according to the provisions of those laws. In speaking of
the dilemma in which the plaintiffs were placed, the court
say: "If they deny the validity of the proceedings on *Jones'*
application for the benefit of the insolvent laws, the deed will
afford a sufficient protection against them. If they insist that

the deed is avoided by the provisions of the insolvent laws, they must claim under the permanent trustees such interest only as by that law is awarded to them." The result was that they were required to "elect to be non-suited, or to take a dividend of the funds in the hands of the trustees."

The language first quoted, from page 501 of *8th Gill*, fully sustains the position stated in *Larrabee vs. Talbott*, as likewise do the cases of *Boyle vs. Zacharie and Turner*, and *Woodhull and Davis, vs. Wagner*. But it has been most earnestly insisted, that these cases can have no influence on the question, because the judgments in them were obtained in the United States courts, contending that there is a most important difference between those judgments and such as are rendered in the courts of the State. Admitting to the fullest extent that where the contracts were to have been paid or executed beyond the limits of this State, the judgments rendered thereon in the United States courts might be enforced against the property of insolvent defendants, regardless of our act of insolvency, but insisting that judgments under like circumstances in the State courts must be subject to the insolvent laws of the State.

An examination of the authorities will show clearly, that no such distinction is recognized. How can it be otherwise? Whilst the courts of the general government will follow the decisions of the State tribunals in regard to State laws not unconstitutional, the State courts are bound by the adjudications of the Supreme Court, upon all questions arising under the constitution of the United States. The subject before us is of this latter description.

After commenting upon many decisions in regard to State insolvent laws, in summing up what may be considered the result of them, among other principles stated by Judge Baldwin in the 1st vol. of his reports, at page 301, is the following: "That it makes no difference whether the suit is brought in a State court or the court of the United States; the rule is the same as to rendering judgment or issuing process." Again, on page 302, the judge says, "the discharge of the

defendant by the insolvent laws of Pennsylvania can have no operation on the contract or the remedies to enforce performance."

In *Cook vs. Moffatt et al.*, at page 308, the court say, "The constitution of the United States is the supreme law of the land, and binds every forum, whether it derives its authority from a State or from the United States. When this court has declared State legislation to be in conflict with the constitution of the United States, and therefore void, the State tribunals are bound to conform to such decision. A bankrupt law which comes within this category cannot be pleaded as a discharge even in the forums of the State which enacted it."

A decision of our own court in *Frey vs. Kirk*, 4 *G. & J.*, 520, is to the same effect. The contract in that case was to have been performed in Pennsylvania, and the defendant's discharge, under the insolvent laws of Maryland, was relied upon in defence, but to no effect. The opinion of the court shows, that in the argument it had been supposed a different constitutional rule operated in the United States courts from that which prevailed in the courts of the State where the debtor is sued, and by whose laws he is discharged. *Ogden and Saunders* is considered as not sustaining such a position, and the court then say, "If it were otherwise we should feel some difficulty in sanctioning the doctrine, that a creditor, by pursuing his debtor by suit in the courts of the State granting the discharge, thereby stripped himself of any rights secured to him by the constitution of the *United States*, or in any manner waived them."

These authorities we deem quite sufficient to show, that in regard to the right to levy upon property of an insolvent defendant by way of execution, there is no difference whether the judgment, on which the process is issued, be rendered in a State court or in a circuit court of the United States, where the plaintiff is a non-resident, and whose original claim was to have been executed beyond the limits of the State in which the judgment was rendered and the defendant obtained his

discharge as an insolvent.   If this be true, then, to establish the right of the present plaintiffs to a judgment in their favor upon this attachment, it is only necessary to refer again to the cases of *Woodhull and Davis vs. Wagner; White, Warner and Co., vs. Winn and Ross,* and *Boyle vs. Zacharie* and *Turner,* in each of which a judgment was obtained in the circuit court of the United States, in the State where the defendant was discharged as an insolvent.   In the first and third of these cases executions were issued and sustained, expressly upon the ground that the contracts were to have been performed out of the States where the defendants were discharged.   The second case recognized the principle, that the plaintiffs might have attached property in the hands of the insolvent's trustees, over which he had a control at the time of his application, and which would have been subject to their execution but for his application.

In opposition to these views, and in support of the doctrine contended for on behalf of the defendants, that the original contract is entirely extinguished by the judgment, and that the judgment is a Maryland contract, subject to our insolvent laws, reference has been made to the case of *Green vs. Sarmiento,* 3 *Wash. C. C. Rep.,* 17.   That was an action of debt, brought in Pennsylvania upon a judgment rendered in New York in 1797.   The original contract was made at Teneriffe.   In 1801 the defendant was discharged at Teneriffe as a bankrupt, which discharge he pleaded in defence.   It was contended on the part of the plaintiff, that the original contract was completely extinguished by the judgment, and could not be noticed in reference to any question to which it might previously have given rise, and therefore the debt must be considered as having accrued under the judgment in New York.   The court say, "This is certainly true, where the judgment is conclusive and unexaminable in a court of co-ordinate jurisdiction; nor do the court mean to intimate, that the rule would not be the same in a case where the judgment is only *prima facie* evidence of a debt.   But since this latter point has not been considered, and the court are prepared to

give an opinion upon the great question which has been discussed, of the conclusiveness of a judgment of a State court in every other State of the Union, it is thought best to decide it now." "The great question," whether the New York judgment was conclusive in Pennsylvania or not, being established in the affirmative, the principle then adopted by the court seems to be, that whatever effect a bankrupt discharge at Teneriffe could have on the original contract if obtained prior to the judgment and pleaded in bar to an original suit upon the contract, yet, after the New York judgment, in the suit upon that in Pennsylvania, the discharge at Teneriffe could not avail the defendant. As a foreign discharge it could have no influence upon the judgment, which was prior to it, and based upon a contract, which, at the time of its rendition, was unaffected by bankruptcy. To allow the discharge to affect the contract, so as to defeat the judgment, would be to destroy its conclusive character, by allowing the defendant to go behind the judgment for the purpose of annulling it, when the facts show, that the judgment was obtained upon a valid contract, in full force at the time of its rendition.

If the case of *Green vs. Sarmiento* is to be considered as establishing the doctrine, that a judgment so completely and entirely extinguishes the contract on which it is founded, that the judgment becomes *the contract*, and therefore the *place* of the judgment is the *place* of the contract; and that the original contract cannot be looked to as having any effect or influence upon the rights of the parties; a decision in Massachusetts, and several in New York, will be found directly in opposition. *D. T. Wendell's case*, 19 *Johns.*, 153; *Betts vs. Bagley*, 12 *Pick.*, 572; *Wyman vs. Mitchel*, 1 *Cowen*, 316; *Raymond vs. Merchant*, 3 *Cowen*, 147; *Johnson vs. Fitzhugh*, 3 *Barb.*, *Ch. R.*, 360; *Dresser vs. Brooks*, 3 *Barb.*, *S. C. Rep.*, 429; *Clark vs. Rowling*, 3 *Comstock's R.*, 216. Some of these cases have gone to the extent of allowing a defendant to look behind a judgment at the nature and place of the contract, for the purpose of availing himself of the benefit of an insolvent or bankrupt discharge, under circumstances

where the discharge could have no influence if the judgment was to be considered as *the contract*. In some of them the plaintiffs were permitted to do likewise, for the purpose of showing, that a discharge relied upon by the defendant could not relieve him, because the original contract was such as not to be affected by the discharge, although it would have discharged the judgment if that had been *the contract*.

We wish to be understood as referring to those cases with no other view but to show, that where there has been a judgment the original contract may be looked at for a purpose not inconsistent with the validity of the judgment, but designed to carry it into effect. On pages 480 and 481, of 12 *Pick.*, Chief Justice Shaw says, "Although a judgment, to some purposes, is considered as a merger of the former, and as constituting a new cause of action, yet, when the essential rights of parties are influenced by the nature of the original contract the court will look into the judgment for the purpose of ascertaining what the nature of such original contract was." He refers to *Wyman vs. Mitchell*, 1 *Cowen*, 316, and adds, "Any other decision would carry the technical doctrine of merger to an inconvenient extent, and cause it to work injustice." This language of Judge Shaw is cited with approbation in 3 *Barb.*, *S. C. R.*, 450.

The cases in regard to how far a judgment will operate as a merger or an extinguishment of the original cause of action will be found collected and examined with much care by Judge Gridley, in *Dresser vs. Brooks*, already referred to. On page 447, he says, "That the original debt still exists in the judgment, and that the judgment is but the original debt in a new form."

In *Clark vs. Rowling*, at *page* 320 of 3 *Comstock's Rep.*, the court admitted, that notes as *evidence of an indebtedness* were merged in the judgment, which, as a greater security, extinguished the lesser, but they did not assent to the proposition, that the judgment, *to all intents*, became a new debt, and so fully merged or extinguished the notes, that the court could not look behind the judgment for the purpose of pro-

tecting the defendants in an equity connected with the origi-
nal contract.  They say, "A judgment, instead of being re-
garded strictly as a new debt, is sometimes held to be merely
the old debt in a new form, so as to prevent a technical mer-
ger from working injustice.  And this exception to the doc-
trine contended for by the plaintiff, has obtained, especially
in cases of insolvency and bankruptcy, for the protection as
well of the creditor as the debtor, and has been applied im-
partially for the benefit of both."

From the dissenting opinion of Ch. J. Bronson it will be
seen, that his views on the subject of merger or extinguish-
ment, to some extent, differ from those of a majority of the
court.  He thought the judgment in that case prevented the
defendant from availing himself of his discharge as a bank-
rupt.  The principles, however, which he recognizes are such
as fully justify our views on the present occasion.   On page
228 he holds, that a judgment on a note merges or extinguish-
es the note, so that another action could not be maintained
upon it.  But it is still undoubtedly true, "that courts may
sometimes look beyond the judgment to see for what cause it
was recovered."  He admits this may be done for various
purposes.  The plaintiff may do so to secure his rights as a
creditor against a fraudulent conveyance by the debtor, or as
an answer to an insolvent or exemption law passed after the
contract was made on which the judgment was recovered.
But he says, "neither party can go behind the judgment for
the purpose of attacking or impeaching it by pleading in a
collateral action."

It was argued by counsel, in *Wyman vs. Mitchell,* that the
judgment merged the original debt, so that no suit could be
maintained upon it.   The judge having admitted the correct-
ness of the general proposition, then says, "But I see no ob-
jection, in principle, to permitting an inquiry into the time of
making the agreement and contract on which the first judg-
ment was founded, for the purpose of taking the case out of
the operation of the defendant's discharge."    It is perfectly
clear, that the court, in that case, did not consider the origi-

nal contract so completely extinguished by the judgment as to make the judgment a new debt in every respect.    Had the judgment been regarded as a new debt, originating at the time of its rendition, the discharge of the defendant must necessarily have applied to such new debt, and discharged it. The result, however, was just the reverse.    The court gave judgment in favor of the plaintiff, upon the ground that the original debt, which was the foundation of the first judgment, arose prior to the passage of the insolvent act, which they held to be void as to all such debts.

The case of *The Bank of the United States vs. Merchants Bank of Baltimore,* 7 *Gill,* 434, has been referred to as sustaining the decision in *Green vs. Sarmiento,* and affirming the principle contended for by the appellee.    In 1836 a suit was instituted in Pennsylvania, upon an account, and judgment obtained on the 23rd of April 1842.    On the same cause of action an attachment was issued in Maryland, on the 11th of September 1841.    A judgment of condemnation in the attachment was resisted, because of the judgment in Pennsylvania, which, it was said, extinguished the original cause of action.    This view of the subject was sanctioned by the Court of Appeals, and *Green vs. Sarmiento* was referred to as authority on this point.    This decision adopts the principle, that a judgment so far extinguishes the original cause of action as to prevent a second judgment from being recovered upon it in another suit at law.    It does not, however, as the appellee contends, decide that the contract is extinguished in every case for all purposes.    If a bond is given, reciting it to be for the purchase money of land, and a judgment should be rendered upon it after the obligor had conveyed away all his interest in the land, and the obligee should exhaust all his remedies at law without obtaining payment of his claim, it cannot be doubted that he might file a bill in equity upon the bond, for the purpose of enforcing his vendor's lien.    The apparently comprehensive character of the language used in 3 *Wash. R.,* and 7 *Gill,* in regard to the extinguishment of a contract by a judgment, cannot properly be considered as ex-

cluding every exception to, or qualification of, the rule. The point actually decided in the latter case was, that the extinguishment prohibited a second judgment at law upon the original claim. The present is not a second suit on the original cause of action, but an attachment, or in other words, an execution upon the judgment to compel payment.

It has been argued, that the two last mentioned cases are directly in conflict with that of *Larrabee vs. Talbott.* It cannot be supposed that the learned judge, who delivered the opinion in 7 *Gill,* so considered them, as he had prepared the opinion in *Larrabee vs. Talbott,* only one year before.

Assuming, however, that the decisions in 3 *Wash. R.,* and 7 *Gill,* are to be considered as asserting the doctrine, that the judgment before us extinguished the original contract, and the judgment became a Maryland contract, subject to the insolvent laws of this State; nevertheless we cannot adopt the principle, because it is in direct opposition to *Woodhull and Davis, vs. Wagner; White, Warner and Co., vs. Winn and Ross; Boyle vs. Zacharie and Turner; Larrabee vs. Talbott,* and the Massachusetts and New York cases referred to on the subject.

Whilst none of the cases cited from Massachusetts and New York deny that a judgment so merges the cause of action on which it is based that a subsequent suit cannot be maintained upon it, this, as a general principle, is expressly conceded in some of them. These cases, therefore, are not at variance with the real point decided in the *Bank of the United States vs. Merchants Bank of Baltimore.* And that case can only be considered as *authoritatively* adopting any doctrine supposed to have been decided in *Green vs. Sarmiento,* except that which is *necessarily* involved in the principle of merger or extinguishment, to the extent just stated.

So far as the present suit is concerned it is unnecessary to oppose the doctrine of *Green vs. Sarmiento,* supposing the real point there decided to be, that the New York judgment was so conclusive as to prevent the defendant from impeaching or invalidating the same, upon the ground, that the orig-

inal contract was discharged by his discharge as a bankrupt, obtained after the rendition of the judgment.

When the present contract was entered into, *the constitution of the United States* protected it from being in any degree affected by insolvent proceedings in this State. This protection followed it into, and formed part of, the judgment. To sustain the views of the appellants there is no necessity to go behind the judgment for the purpose of impairing it in any respect, or to deny its conclusiveness, but just the reverse. To say that the insolvency of the defendant will not prevent a condemnation under the attachment, is to affirm the power of the original judgment, and afford to the plaintiffs the full benefit of the constitutional protection, to which they were entitled at the inception of the contract, and which remained unimpaired up to the rendition of the judgment.

The appellee admits, that under such a contract as the one stated in the record, if a suit was pending in a Maryland court, the constitution of the United States would prevent the defendant from setting up his discharge as an insolvent in bar of the plaintiff's right to an absolute and unqualified judgment. But such a judgment, when obtained, will be subject to our insolvent laws. According to this theory, the constitution protects the foreign contract of a *non-resident creditor*, until there is a judgment upon it, and then the protection ceases. A very slender protection this. Certainly it is not such as we think the constitution intended, or such as the authorities we have cited sanction.

*Glenn vs. Gill, 2 Md. R.*, 17 *and* 18, has been referred to as denying the right of the appellants to their attachment. There the attachments were laid in the hands of a receiver appointed by the chancellor, before either of the parties had applied for the benefit of the insolvent laws. Having understood that the circuit court of the United States for this district had decided that the funds in the hands of the *same receiver* could not be attached, and that this point had gone up to the Supreme Court, this court determined to follow that decision until it should be determined otherwise upon the ap-

peal.   The priorities of the respective claimants were not ad-
judicated upon, but left to be settled elsewhere, not con-
ceiving the question regularly presented in that case.   The
chief justice who decided in the circuit court, that an attach-
ment could not be laid in the hands of a receiver, we have
already seen, held, in *White, Warner and Co., vs. Winn and
Ross*, that property, belonging to an insolvent at the time of
his application, might be levied upon in the hands of his
trustee, under an attachment.   Neither his opinion, therefore,
in regard to the receiver, nor the decision of this court, based
upon it, can be considered as a denial of the right of the ap-
pellants to a judgment in their favor.   In regard to such
claimants, our insolvent laws are considered as nullities, and
as the insolvent's trustee acquires all his rights under those
laws he can have no rights in opposition to those of the ap-
pellants.

The counsel for the appellee has pressed, with much ear-
nestness, the following remark in *Glenn vs. Gill:* "Although
in the case of *Larrabee vs. Talbott*, 5 *Gill*, 426, it was held,
that a non-resident creditor might attach in the hands of a
trustee of an insolvent any undistributed funds, we do not
feel ourselves called upon to extend the principle any further
than we are actually compelled."

An unwillingness to extend the principle recognized in the
last mentioned case, further than the court were bound to go,
is not understood to be a denial of the authority of that deci-
sion, but that the doctrine contained in it is a hardship on
domestic creditors, and therefore should be kept within the
adjudications on the subject,   If, in our opinion, the plain-
tiff's claim is in accordance with the principle adopted in that
case, and is sustained by the decision of *Chief Justice Taney*,
there would be no inconsistency in giving judgment for the
plaintiffs, although we might be unwilling to extend the doc-
trine further than we are bound to do.

*Farmers Bank of Delaware, vs. Beaston*, 7 *G. & J.*, 428,
has been relied upon for the purpose of showing, that an at-
tachment cannot be levied upon property or assets in the

hands of the trustee of an insolvent debtor. The language of the court is to that effect; but it is perfectly manifest, that such a question did not necessarily arise in the case. Receivers had been appointed by the circuit court of the United States in a case in equity, pending between the United States and the Elkton Bank. The suit before the court was an attachment by the Farmers Bank of Delaware against Beaston, as garnishee of the Elkton Bank. A judgment of condemnation was resisted for several reasons, among them, because the United States had acquired a preference in consequence of the insolvency of the Elkton Bank; and if no such priority existed, still the appointment of the receivers by the circuit court placed the debt due from the garnishee, so under the control of that court, as a court of equity, that it could not be taken in execution or attached. The receivers did not take possession of the assets generally, and they did not assume any control whatever over the claim in controversy. The court thought the law relating to sequestrators should apply to receivers, and then say, "If the sequestrators do not take possession, and a judgment creditor takes out execution, notwithstanding the sequestration awarded, there may be a levy under the execution." It was also held, that there was no insolvency or bankruptcy. As there was no insolvency or bankruptcy, and no trustee of an insolvent or assignee of a bankrupt, and the appointment of the receivers, under the circumstances, was considered as presenting no obstacle in the way of the plaintiffs' attachment, it is evident there was no necessity for deciding, that "money or effects in the hands of the assignee of the bankrupt, or the trustee of an insolvent debtor, cannot be attached." Where this remark is made the court are discussing the question, how far the right of the attaching creditors was affected by the appointment of receivers, and their giving bond without further action on their part. So far as that case was concerned, it might have been settled just as it was, without even deciding whether funds or property, in the posession of a receiver, could be attached.

The right of a non-resident creditor to attach property in

the hands of an insolvent's trustee, not necessarily arising in
that case, it cannot be considered as a binding authority on
the point, especially in direct opposition to *Larrabee vs. Tal-
bott*, and *White, Warner & Co., vs. Winn and Ross*. We do
not forget that a similar remark has been made in regard to
the former of those two cases, so far as relates to this par-
ticular subject. But the decision there, of the point directly
in issue, absolutely required the adoption of the principle,
that the State insolvent laws were null and void, as against
non-resident creditors holding foreign claims.

Proof was offered to show that when the goods were trans-
ferred and delivered to the appellant, Larrabee, as agent for
D. Berrien, Jr., & Co., by Rogers and Frick, they were ac-
tually insolvent, and their condition known to D. Berrien, Jr.,
& Co., and that Rogers and Frick intended at that time to
apply for the benefit of the insolvent laws. By the express
provisions of those laws, such a transfer is declared to be ab-
solutely void, and the property to be vested in the trustee,
upon his appointment, as effectually as any property specified
in the schedule of the insolvent, and yet the court held that
transfer perfectly valid, because D. Berrien, Jr., & Co. were
citizens of New York, having a contract there to be performed.
Speaking of the effect of the constitution of the United States
upon State insolvent laws, the court make large quotations
from *Cook vs. Moffatt and Curtis;* among others, adopting
the principle, that a State "has no constitutional power to
inflict her insolvent laws on contracts and persons not within
her limits." See page 439 of 5 *Gill*. And again, on page
441, it is said: "The true view of the case is, that the right
of these creditors to obtain a preference over the other credi-
tors of the insolvent, and the privilege of the debtors to give
this preference, stands precisely as if these insolvent laws
were not to be found among the statutes of the State."
Those laws are, therefore, to be regarded as perfect nullities,
entirely void of any power to invalidate such a transfer, and
having no effect upon the rights of those creditors, notwith-
standing the language of the statutes, uncontrolled by the

constitution of the general government, would certainly have rendered such a transfer perfectly nugatory. Thus it will be seen that the unconstitutionality of the insolvent laws, in reference to the claims of creditors under such circumstances, was necessarily involved in that case; and being about to decide in favor of the creditors claiming adversely to those laws, it would seem to be quite consistent for the court to hold, that such claimants might obtain in a Maryland court an absolute and unqualified judgment, and to levy their execution upon any property of the insolvent debtors remaining in the hands of their trustee. The recognition of which principle, sustains the claim of the appellants.

The rights of creditors of this description, acquired under attachment or trustee process, are elaborately discussed in 2 *Woodbury and Min. Rep.*, 449, *Perry Manufacturing Co. vs. Brown, et al.* The decision of Judge Woodbury in that case, in the circuit court of the United States for Massachusetts, is in conflict with *Larrabee vs. Talbott*, and *White, Warner & Co., vs. Winn and Ross.* There the proceedings in insolvency had commenced prior to the institution of the suit, in which it was claimed that a lien of preference had been created by trustee process; because the plaintiffs were non-residents, having a claim to be performed out of the State of Massachusetts, and suing in the United States court. It was held that no lien was created, inasmuch as, by the proceedings under the insolvent laws of the State, the title to the property had passed from the control of the insolvent debtor. The doctrine of that case is, that the transfer of property under a State insolvent system, will prevent any subsequent lien from being acquired thereon by a non-resident creditor; but when he obtains a prior lien, it will be protected by acts of Congress and the constitution, and will not be superseded or discharged by the insolvent laws, nor is the suit or contract to be thus discharged. See page 472, where it is also said: "The advantages belonging to the non-resident creditor thus suing, are not the creation of a lien in any different way, or to any extent different from a resident creditor; but the retention of

one, when earliest created, and saving it, and the contract and suit from being discharged under the insolvent system, as they are discharged by it in the State courts, and the being able to attach any future earnings or property of the debtor, which the resident creditors cannot do after the insolvent proceedings in their own domestic tribunals.''

In denying to such creditors the right to acquire a lien, subsequently to an application for a discharge under insolvent laws, upon the grounds taken in that case, is not only in opposition to the two late cases so frequently referred to by us on this point, but is contrary to the decisions of the Supreme Court declaring such laws to be void, as against the creditors here spoken of. And especially is such a doctrine at variance with that class of cases, by which it has been settled that if a creditor, whose claim is protected against insolvent proceedings, shall voluntarily make himself a party to, or claim under them, he will, in all respects, become subject to the laws by which they are regulated.

By refusing the creditor the privilege of obtaining a lien upon the property of his debtor, after a transfer under his petition as an insolvent, it will be necessary for the creditor, either to abandon all claim to any payment out of the property to be distributed under the petition, or else consent to take a dividend, and thereby relinquish his constitutional protection, so that his debt will be discharged or released upon the same terms as if he were a domestic creditor. Such at least would be the effect of claiming a dividend from the insolvent's trustee, according to a number of adjudged cases. If it should be said that whilst Judge Woodbury holds the doctrine stated in relation to the inability of a non-resident creditor, to obtain a lien after the property has been conveyed by operation of law to the trustee of the insolvent debtor, his opinion must be considered as permitting the claimant to share in the distribution of the insolvent's assets, without losing the right of claiming and enforcing the payment of the balance of his debt, out of any future earnings or property of the debtor. If this be the proper construction of the opinion, it is objectionable,

in that view, as being at variance with a principle well established by a number of decisions. See 1 *Baldw. C. C. Rep.*, 301; 3 *Peters*, 411; 14 *Peters*, 75; 5 *Gill*, 441; and *White, Warner & Co., vs. Winn and Ross.* Yielding to what is considered the weight of authority, we must decide in favor of the appellants on the first question.

Having already said the proceedings under the insolvent laws are to be considered as inoperative, when coming in collision with the claim of the appellants, it matters not whether the attachment actually came into the hands of the sheriff, and was levied before or after the insolvent's petition. And being levied before the attachments of the other non-resident creditors, the appellants are entitled to a decision in their favor on the second question, so far as any question may arise in reference to any claim on the part of the other attaching creditors, in reference to the same assets levied upon by the appellants.

We therefore reverse the judgment, and under the agreement filed a procedendo will be awarded.

We do not consider that under this record any of the cases mentioned in it, except the first, are regularly before us for decision, and therefore pronounce no *judgments* in them. But the court below will have no difficulty, in applying the principles of this opinion to these cases under a similar state of facts.

*Judgment reversed and procedendo awarded.*