NEW YORK COUNTY.—HON. D. G. ROLLINS, SURRO-
GATE.—June, 1886.

HARDENBERG *v.* MANNING.

*In the matter of the estate of* STEPHEN S. ROWLAND,
*deceased.*

The right of a creditor of a decedent, to priority in payment of his claim out of the assets of the estate, is unimpaired by the recovery of a judgment against the personal representative.

The claim of an executor or administrator to be reimbursed for the just and reasonable expenses of administration, as provided by 2 R. S., 93, § 58, is paramount to the demands of any creditors.

Decedent died intestate and insolvent, domiciled in New Jersey, and leaving personal property in that state and also in the county of New York. No administration was granted in New Jersey, but the widow, soon after the death, collected the assets there, brought them into New York county, and procured here letters of administration of the estate. Two creditors, of whom one had recovered a judgment in this State against decedent in his lifetime, and the other was decedent's medical attendant in his last illness, who had recovered a judgment here for the amount of his bill, against the administratrix, filed petitions for the payment of their respective claims. By the New Jersey statute, "the physician's bill during the last sickness" is accorded priority over the claims of ordinary creditors.—

*Held,* that the entire amount of the New Jersey assets, less their ratable contribution to the expenses of administration, should be applied to the discharge of the physician's claim, in preference to that of the judgment creditor of decedent.

Cook v. Gregson, 2 *Drewry,* 286—followed.

PETITIONS for the payment of claims out of the assets of decedent's estate. The facts are stated in the opinion.

JOSEPH ROURA, *for administratrix.*

CULVER & CULVER, *for D. S. Hardenberg.*

F. M. LITTLEFIELD, *for Florence M. Manning.*

THE SURROGATE.—The domicil of this decedent at the time of his death was in New Jersey, and it was there that, in March, 1880, he died. He left assets in that state, of the value of $200 and upwards, and other assets of greater value in the city of New York. Soon after his death, his widow collected the New Jersey assets and brought them into the State of New York, and within the jurisdiction of this court. In April, 1880, she obtained letters of administration from the Surrogate of New York county. On January 13th, 1880, one Daniel S. Hardenberg, of Jersey city, N. J., applied to this court for an order directing the administratrix to pay him the amount of a judgment for about $225, which he had recovered in the Supreme court of the State of New York. Hardenberg alleged in his petition that that judgment was for medicine, medical attendance, etc., etc., which he, as a physician, had furnished the decedent in New Jersey, on the occasion of decedent's last illness, and that by the statute laws of that state he was entitled to be preferred over general creditors in the administration of this estate.

It was claimed in his behalf that whatever priority

would be accorded him under New Jersey laws, should here be recognized, at least so far as regards the disposition of the assets brought from that state into this, which assets were admittedly of greater value than the amount of the petitioner's claim.

The administratrix filed an answer to the Hardenberg application, and therein alleged, among other things, that decedent's estate was hopelessly insolvent (which is admitted on all hands). She denied that the petitioner was entitled to preference as a creditor of the estate, and alleged that one Florence M. Manning was so entitled, she having recovered a judgment in this State against the decedent, in his lifetime, for about $500. The administratrix also alleged that the assets which would remain in her hands, after paying expenses of administration, would not suffice to pay the creditor so entitled to priority, and prayed that the Hardenberg petition should accordingly be denied.

An application was made to the Surrogate on January 27th, 1886, for an order directing the payment of the Manning judgment. The administratrix filed an answer alleging, among other things, the pendency of the proceedings brought by Hardenberg, and the consequent uncertainty whether the Manning judgment could be paid without injuriously affecting the interests of the other creditors.

These two petitions and answers give rise to certain delicate and perplexing questions.

Shall the New York judgment creditor, whose claim is, by New York law, superior in dignity to that of a physician seeking his compensation for attendance upon the decedent in his last illness, be allowed pri-

ority in respect to the entire assets of this estate ?
or shall the New Jersey creditor have preference so
far as concerns the assets from that state ?   Or if nei-
ther of these schemes is worthy the sanction of the
court, what other scheme should command its ap-
proval ?

It is convenient to consider, at the outset, whether
Dr. Hardenberg has lost any right of priority that he
may have originally possessed by putting his claim
into judgment.   His judgment, *as such*, having been
recovered, not against the decedent himself, but
against the respondent administratrix, is, of course,
inferior to the Manning judgment which was recov-
ered against Mr. Rowland in his lifetime (R. S., part
2, ch. 6, tit. 3, §§ 27, 28; 3 Banks, 7th ed., 2298).
But is Dr. Hardenberg's demand so " drowned in the
judgment" that his original cause of action cannot
here and now be taken into consideration ?

The general doctrine of merger which this admin-
istratrix invokes is subject to exceptions in cases
where its technical operation would work manifest
hardship (Freeman on Judgments, § 217).   In Betts
v. Bagley (12 *Pick.*, 572, 579), SHAW, C. J., said :
" When the essential rights of parties are influenced
by the nature of the original contract, the court will
look into the judgment for the purpose of ascertaining
the nature of the original cause of action."   To simi-
lar effect, see Rawley v. Hooker (21 *Ind.*, 144);
Owens v. Sprigg (2 *Md.*, 457); Wyman v. Mitchell
(1 *Cow.*, 316); Dresser v. Brooks (3 *Barb.*, 429);
Clark v. Rowling (3 *N. Y.*, 216).

Judge COMSTOCK's syllabus of the case last cited is

in these words : " A judgment upon a contract tech-
nically merges the demand, but not in so complete a
sense that the courts may not look behind the judg-
ment to see upon what it is founded, for the purpose
of protecting the equitable rights connected with the
original relation of the parties."

Upon the authority of these cases, and in view of
certain facts and circumstances that will presently be
the subject of comment, I hold that any right of pri-
ority which petitioner Hardenberg may have had at
decedent's death remains unimpaired, notwithstanding
his recovery of judgment against this administratrix.

The statute upon which he relies is in these words:
" Judgments entered of record against the decedent
in his lifetime, funeral charges and expenses, *and the
physician's bill during the last sickness,* shall have
preference and be first paid " (Laws of N. J., Revision
of 1877, vol. 2, p. 764, § 58).

The phraseology of this statute provokes a query
whether the Manning judgment would be treated by
the courts of New Jersey as equal in dignity to the
claim of Hardenberg, or as inferior, and whether, in
case such claim shall be found worthy of any priority
as regards the New Jersey assets, it should or should
not share such priority *pro rata* with the former.
This is a matter which will be hereafter considered.
For present purposes, I shall assume that the Harden-
berg claim would rank in the New Jersey courts
above any judgment recovered against the decedent
outside the limits of that state.

Now, if that assumption be correct, should the
claim in question be here accorded, as regards the

New Jersey assets, the priority which would be accorded it in the New Jersey courts ? Its title to such priority is challenged upon this ground: that property accounted for in a particular jurisdiction by an administrator appointed by that jurisdiction should be distributed (so far as regards conflicting demands of creditors) according to the law of the forum ; and that, as by the law of this State the claim of a physician for attendance upon a decedent in his last illness is inferior in rank to that of a judgment creditor of such decedent, the Hardenberg petition should be wholly denied.

There is a multitude of reported cases in which questions have arisen as to the proper mode of marshalling the assets of a decedent's estate when a portion of such assets has fallen under the control of one state or country and another portion has fallen under the control of another. Most of these cases differ from the case at bar in this respect: that they have concerned the conflicting claims of administrators appointed in different jurisdictions, while this estate has no representative at the place of decedent's domicil. The problem does not seem to me, however, to be complicated by this circumstance. Now, if all the assets of this estate had been situated within this county at the time of the decedent's death, if a domiciliary administrator had been appointed in New Jersey, and if, after such appointment, letters had here been granted (whether to the same person holding the New Jersey letters or to another, and whether principal or ancillary in form), the scheme of administration that our courts would have been bound to

adopt as between creditors is that which is provided
by the statutes of New York. Such preferences would
have been entitled to recognition as those statutes
establish, and the preferences recognized by the *lex
domicilii* would have been ignored. The claim of one
who had recovered a judgment against the decedent
in his lifetime would have been entitled to be paid in
priority over that of a physician who had attended
the decedent in New Jersey in his last illness, and
whose demand would, in that state, be accorded the
higher rank.

Upon this subject Mr. WHARTON says (Conflict of
Laws, § 624): "Which law is to decide—the law of
decedent's domicil or the *lex rei sitæ?* No doubt the
tendency of the Roman jurists is to enforce that of
the domicil. But in America the decisions are posi-
tive that the law of the *situs* is to prevail, which, of
course, when *situs* and domicil conflict, is that of the
ancillary administration granted at the spot where
the property in question lies. In other words, funds
in Massachusetts, belonging to a deceased person
whose domicil was English, are to be distributed ac-
cording to the law of priority in Massachusetts."

Judge STORY says (Conflict of Laws, 8th ed., p. 742,
§ 524); "The established rule now is that, in regard
to creditors, the administration of assets of deceased
persons is to be governed altogether by the law of
the country where the executor or administrator acts,
and from which he derives his authority to collect
them, and not by that of the domicil of the de-
ceased."

At page 743, § 525, Judge STORY states, as the

ground of this doctrine, "that every nation, having a right to dispose of all the property actually situate within it, has a right to protect itself and its citizens against the inequalities of foreign laws which are injurious to their interests." "The rule," adds the learned commentator, "of preference or of an inequality in the payment of debts (whether the one or the other course is adopted) is purely local in its nature, and can have no just claim to be admitted by any other nation which, in its domestic arrangements, pursues an opposite policy. In a conflict between our own and foreign laws, the doctrine avowed by Huberus is highly reasonable that we should prefer our own." "*In tali conflictu magis est ut jus nostrum, quam jus alienum, servemus.*"

The proposition that the assets left by this decedent in New York county should be administered by New York law is also supported by Harrison v. Sterry (5 *Cranch*, 289, 299); De Sobrey v. Delaistre (2 *Har. & J.*, 191); Carson v. Oates (64 *N. C.*, 115); Moye v. May (8 *Ired. Eq.*, 131); Fellows v. Lewis (65 *Ala.*, 343); Findley v. Gidney (75 *N. C.*, 395); McElmoyle v. Cohen (13 *Pet.*, 312); Union Bank v. Smith (4 *Cr. C. C.*, 21); Miller's Estate (3 *Rawle*, 312).

A different doctrine may well prevail as regards the administration, in a jurisdiction other than that of a decedent's domicil, of assets removed from his domicil after his decease, especially if such assets have been removed without authority and brought irregularly into the foreign jurisdiction. The distinction between the two classes of cases is clearly pointed out by

Westlake in §§ 102 and 103 of his treatise on Pri
vate International Law (ed. of 1880):

(1) " Every administrator, principal or ancillary,
must apply the assets reduced into possession under
his grant in paying all the debts of the deceased
. . . . . in that order of priority which is prescribed
by the law of the jurisdiction from which the grant
issued. This rule is an immediate consequence of the
maxim of private international law that the priorities
of creditors in a *concursus* are determined by the *lex
fori* or *lex concursus*—which indeed is almost an in-
evitable maxim, for if two debts were contracted
under different laws, and each by the law under
which it was contracted would be prior to the other,
how shall their order of priority be determined if not
by the law of the forum where they meet?" but

(2) " If, through the submission of a foreign ad-
ministrator or otherwise, foreign assets are being
judicially administered in England, the court will
apply them as the foreign representative should
have done—that is, *will assign to the creditors as
against any particular assets that order of priority
which is prescribed by the law* " (that is—the foreign
law) " *under the authority of which those assets were
reduced into possession* " (citing, among other cases,
Cook v. Gregson, 2 *Dr.*, 286, and Pardo v. Bingham,
*L. R.*, 6 *Eq.*, 485).

In Cook v. Gregson it was held, in accordance with
the principle last stated, that where a person had died
domiciled in Ireland, leaving property both in Ireland
and in England, and the same executors in both coun-
tries, the holder of an Irish judgment had a right to

be paid in priority over English simple contract creditors out of Irish property remitted to England by the executors and being there administered. KINDERSLEY, V. C., declared that the assets so remitted should be administered precisely as if they had remained in Ireland, and in accordance, therefore, with the scheme of priority in force in the latter country.

In Pardo v. Bingham (*supra*), Lord ROMILLY, M. R., held that, where an English decedent residing, but not domiciled, in Venezuela had there contracted a debt with a citizen of that country, the creditor was not, by reason of a preference under the laws of Venezuela, entitled to claim in the English courts priority in payment of his debt out of a fund which by the English law was equitable assets for the benefit of all the creditors, but that such fund should be distributed according to the law of England. But Lord ROMILLY very distinctly intimated that if the decedent and his creditor had both been domiciled in Venezuela, and if the assets had been legal assets, located in that country at decedent's death, he would have reached a different conclusion.

I have discovered, after careful search, no American decisions that are in conflict with the doctrine of Cook v. Gregson. Its correctness was substantially recognized by GIBSON, C. J., in Miller's Case (*supra*). It was there a matter of contention whether a decedent at the time of his death was domiciled in Pennsylvania or in the country of Mexico. Letters of administration had been issued in Pennsylvania, upon the theory that he was domiciled in that state. At the time of his death he was a member of a firm engaged

in business in Mexico.  His surviving partners wound up the business and transmitted the decedent's share therein to the Philadelphia administrator.  These assets were claimed by simple contract creditors domiciled in foreign countries, whose demands amounted to much more than the total value of the estate in the administrator's hands, and were also claimed by the assignees of a specialty creditor who contended for a preference.  Debts under a specialty were by the Pennsylvania law entitled to be paid in priority.  It was held that the decedent was domiciled in Pennsylvania, and that the law of that state should control the administration.

In referring to the demand of one of the unsuccessful creditors who had asserted a right to preference under the law of Mexico, the court observed (GIBSON, C. J.) that, if the claimant had been himself a Mexican, a different judgment would have been pronounced.  "*Perhaps* our courts," said the learned Judge, "would direct a portion of the assets sufficient for the demand to be returned to the proper officer in that country; *certainly* they would not compel payment to be made in a way to deprive him of any advantage he could claim by its laws, or suffer him to be prejudiced by an irregular abduction of the assets from its jurisdiction."

It will be noted that, in the case at bar, the claimant Hardenberg is a resident of New Jersey, and was such resident at the time of rendering the services for which he now seeks to be paid.  When it is further considered that the decedent had his domicil in that state, and that the assets with which we are here

concerned were there situate at the time of his death, it seems to me that the sequestration of those assets for the use of the New York judgment creditor would be an act of flagrant injustice.

I am confirmed in this view by certain observations of ANDREWS, J., pronouncing the opinion of our Court of Appeals, in Matter of Hughes (95 *N. Y.*, 55). It was held in that case that, though the only assets in the hands of an administrator of a decedent's estate holding letters granted by the Surrogate of Kings county, N. Y., were assets that had been irregularly brought from Pennsylvania, where the decedent was domiciled at his death, distribution should, nevertheless, under the circumstances disclosed by the evidence, be decreed by the Surrogate of Kings county. But in the course of his opinion, Judge ANDREWS says: "The removal by the appellant of the assets from Pennsylvania was illegal. The jurisdiction over the assets of an intestate is local, and upon his death their care devolves of necessity upon the sovereignty of the country where they may be, until a legal representative of the intestate is appointed who shall be entitled to their custody. The right of the domestic sovereignty over vacant assets pending the appointment of an administrator, besides being founded upon necessity, arises also from the general duty of the state to guard the interest of domestic creditors and claimants. Where assets so situated have been illegally removed from the jurisdiction of the domicil, to the prejudice of domestic creditors or others interested in the estate, it would, we conceive, be the plain duty of the courts in another jurisdiction, where they

were found, to direct their return to the jurisdiction of the domicil. This course would be alike demanded by a sense of justice and the comity of states. A removal under such circumstances would rightly be considered an act of usurpation, to which courts would not lend their sanction."

It is impossible in the present case to transmit to the jurisdiction of this decedent's domicil the assets which were brought thence into this county, as the estate has there no legal representative. This court must, therefore, as regards those assets, take the course which it would pursue if sitting in New Jersey. Now it is not suggested by the respondent that there are in that state any persons who have claims against these assets superior or equal to those of Dr. Hardenberg. I think, therefore, that but for the necessity of making provision for defraying administration expenses, it would be proper to direct the immediate payment, not of the judgment, but of the original claim of Dr. Hardenberg. For it is true as regards the payment of a decedent's debts, no less than as regards the division of a surplus among his next of kin, that it is a matter, not of jurisdiction, but of judicial discretion, dependent upon the particular circumstances, whether a court will or will not decree distribution of the assets within its jurisdiction among all persons having an interest therein (1 Story's Eq. Jur., 13th ed., § 589). The administratrix is correct, however, in insisting that her right to be reimbursed for the just and reasonable expenses of her administration is paramount to the claims of any creditor of

the estate (R. S., part 2, ch. 6, tit. 3, § 58; 3 Banks, 7th ed., 2303).

The accounting of the administratrix is now proceeding before the referee. When it shall have terminated and when the court shall have ascertained what amount is or should be in the hands of the administratrix for distribution among creditors, it will appear whether all, and if not all what part of, the Hardenberg claim can be satisfied. To the discharge of that claim the entire amount of the New Jersey assets, less such contribution as they must make to the payment of administration expenses, will be held applicable. Such claim ranks, as to such assets, above the Manning judgment, the same not having been recovered in the state of New Jersey, and being unentitled therefore to preference in that state (Cameron v. Wurtz, 4 *McCord*, 278; McElmoyle v. Cohen, 13 *Pet.*, 312; Brown v. Public Administrator, 2 *Bradf.*, 103).